1  EUGENE RYU, Bar No. 209104
   Gene.Ryu@klgates.com
2  PENNY CHEN, Bar No. 280706
   Penny.Chen@klgates.com
3  K&L GATES LLP
   10100 Santa Monica Blvd.
4  8th Floor
   Los Angeles, CA  90067
5  Telephone: 310.553.5000
   Fax No.:    310.553.5001
6
   Attorneys for Defendants,
7  TIREHUB, LLC

8
9                 UNITED STATES DISTRICT COURT

10                EASTERN DISTRICT OF CALIFORNIA

11 | | |
|---|---|
| DONSHEA JONES, individually, and on behalf of all others similarly situated. | Case No. |
| | *(Originally filed in County of Solano Superior Court Case No.: FCS056062)* |
| Plaintiff, | **DEFENDANT TIREHUB, LLC'S NOTICE OF REMOVAL TO FEDERAL COURT** |
| v. | |
| TIREHUB, LLC, and DOES 1-100, inclusive, | **[28 U.S.C. §§ 1332 , 1441, & 1446]** |
| Defendants. | Complaint filed: February 10, 2021 |

309282832.3

**TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant TIREHUB, LLC ("Defendant") hereby effects removal of the above-referenced action from the Superior Court of the State of California for the County of Solano to the United States District Court for the Eastern District of California. This removal is based on 28 U.S.C. §§ 1332, 1441 and 1446, and, specifically, on the following grounds:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. PLEADINGS, PROCESS, AND ORDERS

2. On February 10, 2021, Plaintiff DONSHEA JONES ("Plaintiff") filed a Class Action Complaint against Defendant and various Doe defendants in Solano County Superior Court: *Donshea Jones, individually, and on behalf of all others similarly situated, v. TireHub, LLC, et al.*, Case No. FCS056062 (hereinafter, the "Complaint"). The Complaint asserts the following causes of action: 1) unlawful failure to pay wages; 2) failure to provide meal and rest periods; 3) failure to provide accurate itemized wage statements; 4) failure to pay wages on termination; and 5) unfair business practices under the Unfair Competition Act. Additionally, Plaintiff seeks attorney's fees and various penalties under the California Labor Code.

3. On February 24, 2021, Plaintiff served the Complaint on Defendant, through Defendant's agent for service of process, National Registered Agents, Inc., a copy of which is attached to the Declaration of Penny Chen ("Chen Decl.") as **Exhibit "A."**

4. Along with the Summons and Complaint, Defendant has received a Civil Case Cover Sheet; Notice of Case Management Conference and Notice of Assignment of Judge for All Purposes; and Solano County Superior Court Alternative Dispute Resolution (ADR) Information and Stipulation and Order. These documents are attached to Chen Decl. as **Exhibit "B"**.

5. Defendant filed and served its Answer to Plaintiff's Unverified Complaint on March 25, 2021. Defendant's Answer is attached to Chen Decl. as **Exhibit "C"**.

6. Pursuant to 28 U.S.C. § 1446(d), the attached Exhibits A - C constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Solano County Superior Court or served by any party.

7. To Defendant's knowledge, no proceedings related hereto have been heard in Solano Superior Court.

### III. TIMELINESS OF REMOVAL

8. This Notice of Removal is timely filed as it is filed within thirty (30) days of February 24, 2021, the date of service of the Summons and Complaint, and within one year from the commencement of this action. *See* 28 U.S.C. § 1446(b).

### IV. CAFA JURISDICTION

9. As set forth below, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) there is diversity between at least one class member and the sole named and served Defendant; and (4) the total amount in controversy for all class members exceeds

$5,000,000.

### A. The Proposed Class Contains At Least 100 Members

10.  28 U.S.C. § 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

11.  Plaintiff seeks to represent a class consisting of "[a]ll persons employed by Defendants as non-exempt employees on or after February 10, 2017" through trial (Complaint at ¶¶ 3, 18.)  According to Plaintiff's definition, there are over 348 putative class members in this case to date.  (*See* Declaration of Amanda Myers in Support of Notice of Removal of Civil Action to Federal Court ("Myers Decl.") ¶ 3.)

### B. Defendant is Not a Governmental Entity

12.  Under 28 U.S.C. § 1332(d)(5)(B), the CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

13.  Defendant is a corporation, not a state, state official or other government entity exempt from the CAFA.  (Myers Decl., ¶ 2.)

### C. There Is Diversity Between At Least One Class Member And Defendant

14.  CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

15.  An individual's domicile supporting diversity of citizenship can be determined by, inter alia, physical residency and place of employment. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Lopez v. Costco Wholesale Corporation*, 2021 WL 487368, *2 (E.D. Cal. Feb. 10, 2021).  The Complaint indicates that Plaintiff worked at

one of Defendant's tire distribution centers which are physically located in the state of California. (Compl., ¶ 5.) Plaintiff was employed by Defendant from approximately November 23, 2020 to approximately February 19, 2021. (Myers Decl., ¶ 5.) Throughout her employment, including at time of the filing of the Complaint on February 10, 2021, Plaintiff's address on file was in the city of Oakland, California. (Myers Decl., ¶ 5.) Plaintiff's address on file through present remains in Oakland, California. (Myers Decl., ¶ 5.) "[C]ourts have created a presumption in favor of an established domicile as against a newly acquired one." *Lew*, 797 F.2d at 751. Therefore, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in the State of California. Therefore, Plaintiff is a citizen of California.

16. Conversely, Defendant is not a citizen of California. The citizenship of a limited liability company for diversity purposes is determined by examining the citizenship of each member of the company. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006.) The members of TireHub, LLC at the time this action was commenced in state court, and still are, The Goodyear Tire & Rubber Company, an Ohio corporation ("Goodyear") and Dawson Member, LLC, a Delaware limited liability company ("Bridgestone"). (Myers Decl., ¶ 2.)

17. At the time this action began in state court, Goodyear was, and still is, a corporation organized under the laws of the State of Delaware. (Myers Decl., ¶ 3.) Goodyear's corporate offices and headquarters are located in Akron, Ohio, and its executive and administrative functions are also housed in Akron, Ohio. (Myers, Decl., ¶ 3.) Accordingly, Goodyear's principal place of business is in Akron, Ohio, and Goodyear is deemed a citizen of the State of Delaware, where it is incorporated, and Ohio, where it has its principal place of business. *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010) (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").

18. At the time this action began in state court, Bridgestone was, and still is,

5.

organized under the laws of the State of Delaware. (Myers Decl., ¶ 4.) Bridgestone's corporate offices and headquarters are located in Nashville, Tennessee, and its executive and administrative functions are also housed in Nashville, Tennessee. (*Id*.) Accordingly, Bridgestone's principal place of business is in Nashville, Tennessee, and Bridgestone is deemed a citizen of the State of Delaware, where it is incorporated and of Tennessee, where it has its principal place of business. *See* 28 USC § 1332(d)(10); *Hertz*, 130 U.S. at 1192-93. Bridgestone's members are Bridgestone Member, Inc. and Bridgestone Americas Tire Operations, LLC ("BATO"). Bridgestone Member, Inc. is a corporation incorporated in Delaware, with its principal place of business in Nashville, Tennessee. BATO is a limited liability company organized under the laws of Delaware with its principal place of business in Nashville, Tennessee. BATO's sole member is Bridgestone Americas, Inc., which is a corporation incorporated under the laws of Nevada with its principal place of business in Nashville, Tennessee. (Myers Decl., ¶ 5.)

19. Accordingly, because Goodyear and Bridgestone were, at the time of the filing of the Complaint, citizens of Delaware, Ohio, Nevada, and Tennessee, it follows that TireHub, LLC, with Goodyear and Bridgestone as its sole members, is a citizen of Delaware, Ohio, Nevada, and Tennessee. *See Johnson*, 437 F.3d at 899.

20. No other party has been named or served as of the date of this removal. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

21. Accordingly, the named Plaintiff is a citizen of a State different from Defendant, and diversity exists for purposes of CAFA jurisdiction. See 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### D. The Amount in Controversy Exceeds $5,000,000[1]

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

22. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which the amount in controversy for all class members in the aggregate exceeds $5,000,000. 28 U.S.C. § 1332(d).

23. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 81. Supporting evidence is required only if the plaintiff contests, or the court questions, the allegations of the notice of removal. *Id.* at 89. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 82.

24. Here, Plaintiff does not allege the amount in controversy in the Complaint. However, the allegations and claims make evident that she places more than $5,000,000 in controversy.

25. Plaintiff alleges a cause of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq*. (Complaint ¶¶ 108-114.) Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years from the filing of the Complaint, or going back to February 10, 2017. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

      i. <u>Plaintiff's First Cause of Action for Unpaid Minimum, Regular, and Overtime Wages Places **$1,250,572** in Controversy</u>

26. By way of her first cause of action, Plaintiff and the putative class seek allegedly unpaid wages at minimum, regular and overtime wage rates pursuant to California Labor Code §§ 510, 1194, and 1198. (Complaint ¶¶ 29-38.) Plaintiff alleges

7.

that she and the putative class members incurred unpaid minimum, regular, and overtime compensation because Defendant failed to compensate them for all hours worked, and failed to pay overtime for hours worked in excess of eight hours per day and/or in excess of 40 hours in a week. (Complaint ¶ 29-38.) However, Plaintiff does not state the amount of unpaid overtime she and the putative class allegedly worked each week.

27. Between July 1, 2018 (the date Defendant was formed) through March 20, 2021, Defendant employed approximately 348 non-exempt workers in the state of California. These 348 non-exempt employees worked approximately 22,272 work weeks, and their average hourly rate was pay was approximately $18.06 per hour. (Myers Decl., ¶ 6.)

28. If Plaintiff prevails on her claim for regular wages, she and the putative class may be entitled to recovery of all unpaid wages. Moreover, to determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of unpaid hours worked by Plaintiff and the putative class that would have been considered overtime hours is multiplied by one and one-half times their respective regular rates of pay rate in effect during the time the overtime was allegedly worked. *See* Cal. Wage Order 7-2001, §3(A)(1).

29. Plaintiff does not allege a specific amount of damages for this cause of action, but asserts that Defendant had a "policy of accepting a certain amount of collateral damage," (Compl., ¶ 64) and that putative class members "oftentimes" worked in excess of eight hours in a day and/or forty hours in a workweek (Compl., ¶ 30), indicating more than a rare or sporadic violation rate. Even taking an extremely conservative approach of one hour of regular wages and one hour of overtime wages per workweek, Plaintiff's regular wages claim places at least **$402,232** into controversy ($18.06 x 1 hour per week x 22,272 workweeks) and her overtime claim places at least **$603,348** into controversy ($18.06 x 1 hour per week 1.5 overtime rate x 22,272 workweeks).

8.

309282832.3

30.     Further, Plaintiff seeks liquidated damages under Labor Code § 1194.2 for Defendant's alleged failure to pay minimum wages to putative class members (Compl., Relief Sought at ¶ 8).  If she prevails, liquidated damages may be awarded in the amount equal to the unpaid minimum wages.  Starting from January 1, 2018, the California state minimum wage has been at least $11 per hour.[2]  Taking the same conservative approach of one hour of unpaid minimum wage per week per employee, Plaintiff seeks to recover another **$244,992** from this action ($11 x 1 hour per week x 22,272 workweeks).

31.     In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff was to prevail on her unpaid wages claim with respect to herself and the putative class, the amount in controversy for this claim alone could be **$1,250,572**.

> ii. <u>Plaintiff's Second Cause of Action for Failure to Provide Meal and Rest Periods Places **$1,608,930** in Controversy</u>

32.     Plaintiff's second cause of action alleges that Defendant, as a matter of "consistent policy," denied Plaintiff and putative class members meal periods and rest breaks, and failed to pay meal period and rest break premiums due in violation of California Labor Code §§ 226.7 and 512.  (Complaint ¶¶ 4, 39-49.)  Specifically, Plaintiff alleges that Defendant "fail[ed] to consistently provide uninterrupted thirty-minute meal periods within the first five hours of work each day, a second uninterrupted thirty-minute meal period with the first ten hours of work each day and/or uninterrupted net ten-minute rest periods to Class Members."  (Compl., ¶ 46.)  Moreover, Plaintiff alleges that "Defendants have **never** paid the one hour of compensation to any Class Member due to their violations of the California Labor Code and applicable IWC Wage Order provisions."  (Compl., ¶ 47) (emphasis added).

33.     Indeed, Labor Code section 226.7 provides that an employer who fails to provide a 30-minute meal period for every five hours worked, or a 10-minute rest break

---

[2] https://www.dir.ca.gov/iwc/minimumwagehistory.htm

for every four hours worked or major fraction thereof, can be liable for up to one meal period premium and one rest break premium per workday. Lab. Code § 226.7. Meal and rest break premiums are equivalent to one hour of the employee's regular rate of compensation. *Id.*

34. This cause of action dramatically increases the amount in controversy in this case. Not only does Plaintiff allege that Defendant had a "consistent policy" of denying putative class members meal periods and rest breaks, she alleges that Defendant **never** paid a one-hour premium for missed meal periods or rest breaks. (Compl., ¶¶ 4, 47.) Although Plaintiff clearly alleges much higher violation rates, even a conservative interpretation of two missed meal periods per week and two missed rest breaks per week places at least $1,608,930 into controversy. Specifically, two unpaid meal period premiums per week places $804,465 in controversy (22,272 workweeks x 2 violations per week x $18.06 per hour), and two unpaid rest break premiums per week represents another $804,465, for a total of **$1,608,930**.

     iii. <u>Plaintiff's Third Cause of Action for Failure to Provide Accurate Itemized Statements Places **$1,008,000** in Controversy</u>

35. Labor Code Section 226(a) provides that employers must, at the time of payment of wages, issue itemized wage statements which reflect nine (9) enumerated categories of information, including gross wages earned, total hours worked, deductions, net wages earned, inclusive dates of the pay period, name of the employee and name and address of the legal entity that is the employer.

36. Section 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

37. In her third cause of action, Plaintiff alleges that "**none** of the [wage]

statements provided by Defendants accurately reflected actual gross wages earned, net wages earned, or the appropriate deductions for Class Members." (Compl., ¶ 54) (emphasis added). Accordingly, Plaintiff alleges that a wage statement violation occurred in each pay period worked by putative class members during the statute of limitations period.

38. From February 10, 2020 through present, Defendant employed 252 non-exempt hourly workers. (Myers Decl., ¶ 6.) Even assuming that all of the putative class members have reached the maximum penalty cap of $4,000 each and are not eligible to accrue any further penalties, Plaintiff places at least **$1,008,000** into controversy (252 employees x $4,000).

### iv. Plaintiff's Fourth Cause of Action for Failure to Pay Wages on Termination Places **$827,870** in Controversy

39. Plaintiff also alleges a claim for failure to pay wages upon separation of employment under California Labor Code § 203, which has a maximum statutory penalty of 30 days of wages per affected employee. The statute of limitations for a wage action is three years. *See* Cal. Code Civ. Proc. § 338.

40. Because waiting time penalties can arise with any willful failure to pay wages, and Plaintiff alleges that separated putative class members were "not paid all wages due" because of Defendant's alleged "willful refusal" to pay, even minute amounts of unpaid wages could give rise to waiting time penalties under Plaintiff's allegations. (Compl., ¶ 58.) *See*, Cal. Lab. Code § 203.

41. Here, there are approximately 191 non-exempt, hourly employees in California whose employment with Defendant ceased within the three year statute of limitations. (Myers Decl., ¶ 5.) Thus, assuming that each of these employees seek the maximum statutory penalty of 30 days of wages per employee, and using the average hourly rate of pay of $18.06 (*see* Myers Del. ¶ 5), the amount in controversy for Plaintiff's and the putative class's waiting time penalties claim alone would be **$827,870**

309282832.3

(191 terminated employees x 30 days x 8 hours x $18.06 per hour).

     v. <u>Plaintiff's Claim for Recordkeeping Penalties Places $126,000 in Controversy</u>

42.    Further, Plaintiff alleges that Defendant violated California Labor Code section 1174(d) by "failing to provide or require the use, maintenance, or submission of time records by members of the Plaintiff Class," and Plaintiff seeks penalties under Section 1174.5. (Compl., Prayer, ¶ 8.) Labor Code section 1174.5 provides a civil penalty of $500 for willful failure to maintain accurate payroll records. Cal. Lab. Code § 1174.5. The statutory period for penalties is generally one year. Cal. Code Civ. Proc. § 340. Approximately 252 employees were employed by Defendant during one year prior to the filing of the Complaint in this action. (Myers Decl. ¶ 5.) Assuming for purposes of removal that Plaintiff can maintain a private right of action for such penalties, and that each putative class member is entitled to the full $500 penalty, the amount in controversy for this claim could be another **$126,000.**

     vi. <u>Plaintiff's Request for Attorney's Fees Places Another **$1,205,343** in Controversy</u>

43.    Finally, Plaintiff seeks reasonable attorneys' fees under California Code of Civil Procedure § 1021.5 and Labor Code § 218.5, which must also be considered in determining whether the jurisdictional limit is met. (Compl., Prayer, ¶ 9.) "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Accordingly, future attorney's fees are properly included in calculating the amount in controversy for CAFA removal. *Id.*

309282832.3

44. In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the total recovery in a class action. Even at 25%, Plaintiff places another **$1,205,343** into controversy.

### vi. Plaintiff Places at Least **$6,026,715** into Controversy in Total

45. Although Defendant denies that Plaintiff and the putative class are entitled to any relief, accepting Plaintiff's claims as true, it is more likely than not that the amount in controversy in this case exceeds **$6,026,715:**

| | |
|---|---|
| Unpaid Regular and Overtime Wages and Liquidated Damages | $1,250,572 |
| Failure to Provide Meal Breaks | $804,465 |
| Failure to Provide Rest Breaks | $804,465 |
| Failure to Provide Accurate Itemized Statements | $1,008,000 |
| Failure to Pay Wages at Termination | $827,870 |
| Recordkeeping Penalties | $126,000 |
| Attorneys' Fees | $1,205,343 |
| **Total** | **$6,026,715** |

46. Based on the allegations in Plaintiff's Complaint, the $5 million jurisdictional amount requirement of the CAFA is met.

47. Defendant provides the foregoing calculations only to demonstrate that the amount in controversy here easily exceeds the amount in controversy requirement of the CAFA. Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations passes muster.

## V. **VENUE**

48. Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a). Plaintiff originally brought this action in the Superior Court of the State of California, County of Solano. The appropriate assignment of this

309282832.3

action is to the Eastern Division of California.

## VI. NOTICE OF STATE COURT AND PLAINTIFF

47. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, written notice of such filing will be given by the undersigned to counsel for Plaintiff. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Solano.

48. WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of Solano, to the United States District Court for the Eastern District of California

Dated:     March 26, 2021

*/s/ Eugene Ry*
EUGENE RYU
PENNY CHEN
K&L GATES LLP
Attorneys for Defendant,
TIREHUB, LLC

309282832.3