1  Scott Edward Cole, Esq. (S.B. #160744)
   Laura Grace Van Note, Esq. (S.B. #310160)
2  **COLE & VAN NOTE**
   555 12th Street, Suite 2100
3  Oakland, California 94607
   Telephone:  (510) 891-9800
4  Facsimile:(510) 891-7030
   Email: sec@colevannote.com
5  Email: lvn@colevannote.com
   Web:  www.colevannote.com
6
   Class Counsel
7

8              **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11 DONSHEA JONES individually, and      **Case No. 2:21-CV-00564-JAM-DB**
   on behalf of all others similarly
12 situated,                            **CLASS ACTION**

13                         Plaintiff,    **NOTICE OF MOTION;
                                         MEMORANDUM OF POINTS AND**
14 vs.                                   **AUTHORITIES IN SUPPORT OF
                                         PLAINTIFF'S MOTION FOR FINAL**
15                                       **AN ORDER:**

16 TIREHUB, LLC,                         **(1) GRANTING FINAL APPROVAL
                                             OF CLASS ACTION**
17                         Defendant.        **SETTLEMENT;**
                                         **(2) AWARDING ATTORNEYS' FEES**
18                                           **AND COSTS TO CLASS
                                             COUNSEL;**
19                                       **(3) AWARDING ENHANCEMENT TO
                                             THE REPRESENTATIVE**
20                                           **PLAINTIFF; AND**
                                         **(4) AWARDING REIMBURSEMENT
21                                           OF SETTLEMENT
                                             ADMINISTRATION COSTS**
22
                                         **Date:   October 6, 2023**
23                                       **Time:  10:00 a.m.**
                                         **Ctrm:  27**
24                                       **Judge:   Honorable Deborah Barnes**

25

26

27

28

*Left margin:* COLE & VAN NOTE / ATTORNEYS AT LAW / 555 12TH STREET, SUITE 2100 / OAKLAND, CA 94607 / TEL: (510) 891-9800

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**, **NOTICE IS HEREBY GIVEN** that, on October 6, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard in United States District Court of the Eastern District of California of the above-entitled Court, located at 501 I Street, Sacramento, CA 95814, Courtroom 27, 14th Floor, Representative Plaintiff Donshea Jones on behalf of the Plaintiff Class, will and hereby does apply to this Court:

1. Granting final approval of class action settlement agreement;

2. Awarding attorneys' fees and costs to Class Counsel;

3. Awarding Enhancement/Service payment to the Representative Plaintiff; and

4. Awarding reimbursement of settlement administration fees and costs.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Laura Van Note, Esq. and exhibits thereto, the Declaration of class representative Donshea Jones, the Declaration of Laura Singh (CPT Group), the complete files and records of this action, and any oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

Dated: September 8, 2023            **COLE & VAN NOTE**

By:   */s/ Laura Van Note*
Laura Van Note, Esq.
Class Counsel

1

**TABLE OF CONTENTS**

I.    INTRODUCTION AND PROCEDURAL HISTORY ..........................1

II.   SUMMARY OF SETTLEMENT AND NOTICE PROCESS .............2

III.  THE SETTLEMENT MERITS FINAL APPROVAL .......................5

    A.    THE SETTLEMENT IS PRESUMED FAIR ........................5

    B.    AS THIS COURT PREVIOUSLY FOUND, THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL ...........................6

        1.    The Value of the Settlement and the Risks Inherent in Continued Litigation Favor Final Approval.....................7

            a.   Missed Meal and Rest Breaks ........................3

            b.   Waiting Time Penalties ...................................3

            c.   Wage Statement Violations ............................3

            d.   PAGA Penalties ..............................................3

            e.   Summary .........................................................3

        2.    The Complexity, Expense and Likely Duration of Continued Litigation Support Approval..........................13

        3.    The Discovery and Factual Investigation Support Approval ............................................................................14

        4.    The Experience and Views of Counsel Favor Final Approval ............................................................................14

        5.    The Class Members' Reaction Favors Final Approval...15

IV.   THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED ..............................................................................15

V.    AN AWARD OF ATTORNEYS' FEES AND COSTS IS APPROPRIATE ............................................................................16

    A.    A COMMON FUND FEE AWARD IS WARRANTED ..........16

    B.    CLASS COUNSEL'S COSTS ARE REASONABLE .............20

VI.   REPRESENTATIVE PLAINTIFF DESERVES THE PROPOSED ENHANCEMENT AWARD ........................................................20

VII.  REIMBURSEMENT OF ADMINISTRATION FEES IS APPROPRIATE ............................................................................22

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

**VIII. CONCLUSION** ..................................................................................**22**

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Adewumi vs. GHS Interactive Security LLC.*,
  No. 34-2017-00210768-CU-OE-GDS (Sacramento Super. Ct. 2019) ...............28

*Alberto v. GMRI, Inc.*,
  *Not Rpt'd in* F. Supp. 2d, 2008 WL 4891201 (E.D. Cal. 2008) .........................20

*Amaral v. Cintas Corp. No. 2*,
  163 Cal.App.4th 1157 (2008)........................................................................14, 15

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011).........................................................................................11

*Augustus v. ABM Security Services, Inc.*,
  2 Cal.5th 257 (2016) ........................................................................3, 11, 18, 28

*Barbosa v. Cargill Meat Solutions Corp.*
  2013 U.S. Dist. LEXIS 93194 (E.D. Cal. July 1, 2013) ......................................22

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. July 2, 2013).............................................................22

*Blum v. Stenson*,
  465 U.S. 886, 900 n.16 (1984) ....................................................................23, 24

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 100 S Ct. 745 (1980) .......................................................5, 22, 24

*Boyd v. Bank of Am. Corp.*,
  No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).........22

*Brinker Restaurant Corp. v. Superior Court*,
  53 Cal.4th 1004 (2012) .......................................................................................12

*Cartt v. Superior Court*,
  50 Cal. App. 3d 960 (1975)..................................................................................21

*Central Railroad & Banking Co. of Georgia v. Pettus*,
  113 U.S. 116, 5 S.Ct. 387 (1885) .........................................................................5

*Chau v. Starbucks Corp.*,
  174 Cal. App. 4th 688 (2009)..............................................................................19

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ............................................................................................22

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*,
  127 Cal.App.4th 387, 397 (2005)........................................................................24

*Cook v. Niedert*,
  142 F.3d (7th Cir. 1998).......................................................................................29

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Davis v. The Money Store, Inc.,*
Case No. 99AS01716 (Sacramento Super. Ct. 2000) ...........................................5

*Dennis v. Kellogg Co.,*
697 F.3d 858, 865 (9th Cir. 2012) ......................................................................8

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (U.S. 1974) .................................................................................21

*Ellis Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................20

*Epic Systems Corp. v. Lewis,*
584 U.S. (2018) ...............................................................................................11

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein,*
30 Cal.4th 1037 (2003) ...................................................................................18

*Finder v. Leprino Foods Co.,*
No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal.
March 12, 2015) ...............................................................................................14

*Fleming v. Covidien Inc.,*
2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) ....................................15

*Franklin v. Kayrpo Corp.,*
884 F.2d 1222 (9th Cir. 1989) .........................................................................18

*Garcia v. Gordon Trucking, Inc.,*
2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) .................................5

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975) ............................................................................10

*Glass v. UBS Financial Services, Inc.,*
*Not Reported in* F.Supp.2d, 2007 WL 221862 (N.D. Cal. 2007) ......................29

*Glendora Community Redevelopment Agency,*
155 Cal.App.3d at 475 .................................................................................25, 26

*Graciano v. Robinson Ford Sales, Inc.,*
144 Cal.App.4th 140 (2006)............................................................................25

*Green v. Obledo,*
29 Cal.3d 126 (1981).........................................................................................4

*Guippone v. BH S&B Holdings LLC,*
2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011) ...............27

*Haitz v. Meyer, et al.,*
No. 572968-3 (Alameda Super. Ct., 1990) ........................................................5

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011, 1029 (9th Cir. 1998).................................................................5

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

*Ibrahimi v. Walgreen*,
(Contra Costa Super. Ct. 2019) Case No. MSC16-02120) ................................... 5

*In re Autozone, Inc. Wage and Hour Litig.*,
Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) ........................................................................................................... 13

*In re California Indirect Purchases*,
1998 WL 1031494, 11 (Alameda Super. Ct. 1998) ............................................ 27

*In re Cipro Cases I and II*,
121 Cal. App. 4th 402 (2004) ............................................................................ 19

*In re GNC Shareholder Litig.: All Actions*,
668 F.Supp. (W.D. Pa. 1987) ..................................................................... 6, 27

*In re Milk Antitrust Litig.*
Case No. BC070061 (Los Angeles Super. Ct. 1998) .......................................... 22

*In re Quantum Health Resources, Inc. Sec. Litig.*,
962 F. Supp. 1254 (C.D. Cal. 1997) .................................................................. 25

*In re United Energy Corp. Sec. Litig.*,
1989 WL 73211 (C.D. Cal. 1989) ............................................................... 6, 27

*In re Washington Public Power Supply System Securities Litigation*,
720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................... 20

*Janata v. Allied Barton Security Services*,
*LLC* (San Diego Superior Court Case No. 37-201300030693-CU-OE-CTL .. 2, 11

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001) ...................................................................................... 25

*Kirby v. Imoos Fire Protection, Inc.*,
53 Cal. 4th 1244 (2012) ..................................................................................... 13

*Kullar v. Foot Locker Retail, Inc.*,
168 Cal.App.4th 116 (2008)............................................................. 9, 10, 18, 20

*La Mesa-Spring Valley School Dist. of San Diego County v. Nobuo Otsuka*,
57 Cal.2d 309 (1962)......................................................................................... 25

*Lealao v. Beneficial California*,
82 Cal.App.4th 19 (2000).................................................................................. 23

*Ling v. P.F. Chang's China Bistro, Inc.*,
245 Cal.App.4th 1242, 1261 (2016) ................................................................. 13

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1239 (9th Cir. 1998)................................................................... 9

*Magadia v. Wal-Mart Associates, Inc.*,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

384 F.Supp. 1058 (N.D. Cal. 2019). ...................................................................... 15

*Makabi v. Gedalia,*
    Case No. BC468146 (L.A. Super. Ct. May 8, 2013) ......................................... 15

*Maldonado v. Epsilon Plastics, Inc.,*
    22 Cal.App.5th 1308, 1337 (2018) ..................................................................... 14

*Naranjo v. Spectrum Security Services, Inc.,*
    (No. S258966) 40 Cal.App.5th 444 (2020 Cal.App. LEXIS 167) ...................... 13

*Officers for Justice Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 9, 20

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ........................................................................................... 21

*Rangel v. PLS Check Cashers of California, Inc.,*
    899 F.3d 1106 (9th Cir. 2018) ............................................................................. 4

*Savaglio v. Wal-Mart Stores, Inc.,*
    Case No. C-835687 (Alameda County Super. Ct.) .............................................. 19

*Serrano v. Bay Bread LLC,*
    2016 Cal. Super. LEXIS 8043 at *22 (June 29, 2016) ...................................... 13

*Serrano v. Priest,*
    20 Cal.3d 25 (1977) ................................................................................... 5, 23, 24

*Smith v. Krispy Kreme Doughnut Corp.,*
    2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .................................................. 6, 27

*Sprague v. Ticonic Nat'l Bank,*
    307 U.S. 161, 59 S.Ct. 777 (1939) ....................................................................... 5

*Stone v. Universal Protection Services, LP,*
    (San Diego Superior Court/American Arbitration Association, Case No. 01-15-0002-7497) ....................................................................................................... 2

*Thurman v. Bayshore Transit Mgmt.,*
    203 Cal.App.4th 1112, 1135-36 (2012) ............................................................. 15

*Van Vranken v. Atlantic Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................... 27, 29

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................... 22

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ......................................................... 5

*White v. Starbucks Corp.,*
    497 F.Supp.2d 1080 (N.D. Cal. 2007) ............................................................... 12

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Williams v. MGM-Pathe Communs. Co.*,
  129 F.3d 1026, 1027 (9th Cir. 1997)..................................................22

*Willner v. Manpower Inc.*,
  (N.D. Cal. 2014) 35 F.Supp.3d 1116 ................................................14

*Young v. Katz*,
  447 F.2d 431 (5th Cir. 1971) ..............................................................18

## Statutes

Cal. Bus. & Prof. Code § 17200 ..............................................................1

Cal. Code of Civ. Proc. § 904.1 .............................................................19

Cal. Code of Civ. Proc. § 1781 ..............................................................21

Cal. Code of Civ. Proc. § 382 ..................................................................8

Cal. Code of Civ. Proc. § 384(b) .............................................................8

Cal. Labor Code § 201 ...........................................................................13

Cal. Labor Code § 203................................................................7, 13, 14, 17

Cal. Labor Code § 226...........................................................7, 13, 14, 15, 17

Cal. Labor Code § 226(e) ......................................................................14

Cal. Labor Code § 226(e)(1) .................................................................14

Cal. Labor Code § 226.7 .....................................................................1, 14

Cal. Labor Code § 2699(e)(1) ...............................................................15

Cal. Labor Code § 2699(e)(2) ...............................................................15

Cal. Labor Code § 2699(i) ........................................................................6

Cal. Labor Code § 2802 .........................................................................16

Cal. Labor Code § 512 .........................................................................1, 12

Cal. Labor Code § 558 ..............................................................................7

## Rules

Cal. Rules of Court, Rule 3.766(d) .........................................................21

Cal. Rules of Prof. Conduct, Rule 4-200(B)(4) .....................................25

## Treatises

*Manual for Complex Litigation (4th ed. 2008)* ..................................8, 21

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Newberg & Conte, Newberg on Class Actions (2002)* ..............................6, 9, 23, 26

*Private Attorneys General Act* ...................................................1, 5, 6, 15, 16, 17, 30

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On February 10, 2021, Representative Plaintiff Donshea Jones filed a class action Complaint in against TireHub LLC ("TireHub" or "Defendant"). In the action, Plaintiff Jones sought individual and Class-wide damages and penalties for (1) unlawful failure to pay wages, (2) failure to provide meal and rest periods, (3) failure to provide accurate itemized wage statements, (4) failure to pay wages upon termination, and (5) violation of the Unfair Competition Law (Bus. & Prof. Code § 17200). The action was then removed to the Eastern District of California. The removed action included a sixth (6th) cause of action under the Private Attorneys General Act Claim (California Labor Code §§ 2699 et. seq).

This dispute is predicated upon the allegations that Defendant's employees were required to complete an inordinate number of delivery stops on their routes, leaving them unable to enjoy meal and/or rest breaks. Specifically, the pleadings allege that Defendant's operational pattern of understaffing and overloading delivery routes, and explicit prohibition of breaks violated California Wage Order provisions and Labor Code §§ 226.7 and 512.

The Parties engaged in extensive formal and informal discovery efforts calculated to flesh out the wage and hour claims of the putative class of employees. These efforts were discussed in great detail in the Motion for Preliminary Approval of this Class Action Settlement. ECF No. 55. Specifically, Defendant produced data regarding the class for purposes of calculating potential damages, depositions were taken, and Defendant produced 320 pages of internal records regarding Defendant's policies and Representative Plaintiff's employment and timekeeping records. On August 9, 2022, the Parties mediated the matter before experienced neutral, Philip K. Cha, a mediator with substantial knowledge of California wage and hour law and class-action procedure. The Parties failed to reach an agreement and continued

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1   litigating through numerous discovery disputes for several more months. Plaintiff

2   served responses to Defendant's Special Interrogatories and Requests for Production

3   of Documents.  Defendant served responses to Plaintiff's discovery requests and

4   supplemental responses to Plaintiff's Special Interrogatories and Requests for

5   Production of Documents. Then, the Parties decided to re-engage Mr. Cha.

6   Ultimately, after another round of mediation with the help of Mr. Cha, the parties

7   were able to reach the instant agreement.

8       On February 2, 2023, the Representative Plaintiff filed his Motion for

9   Preliminary Approval of the Settlement achieved, which this Court granted on May

10  26, 2023. At that time, this Court also preliminarily approved the proposed Class

11  Notice (Exhibit "E" to Declaration of Laura Van Note) and the Notice dissemination

12  program, Laura Van Note as Class Counsel, Donshea Jones as Representative

13  Plaintiff, an enhancement award for Mr. Jones, a PAGA award and CPT Group as

14  the claims administrator. On June 1, 2023, the Court approved a modified Class

15  Notice (Exhibit "E").  ECF Nos. 66-67. A copy of the May 26, 2023 Order has been

16  submitted to the LWDA and the Class Notice been posted on the claims

17  administration website for public viewing. The hearing date of October 6, 2023 was

18  thereupon set for final approval of the Settlement, and as the opportunity for Class

19  Members—should any have an objection to, seek clarification of, or otherwise be

20  heard in connection with the settlement—to be heard.

21      Although no objection has been raised, should any late-filed objections arise

22  prior to the October 6 hearing, the claims administrator and Class Counsel will

23  facilitate any Class Member's participation in this final fairness hearing, and so all

24  Members of this vulnerable workforce may, hopefully, be compensated without

25  delay.

26      Finally, as alluded to above, on June 20, 2023, the Notice was disseminated

27  and was a highly-successful campaign. ***No one submitted an objection***

28

demonstrating tremendous support for this Settlement. As a result of the successful notice campaign, the compendium of information available to the Parties and their counsel, and Class Counsel's and Class Members' support for this Settlement as fair and reasonable, it now merits final approval.

## II.    SUMMARY OF SETTLEMENT AND NOTICE PROCESS

Under the preliminarily-approved Settlement Agreement, Defendant will pay $550,000 ("Gross Settlement Fund") for a release of Class Members' claims. Further key terms include:

*Class Definition.* The Class consists of "all current and former non-exempt employees who worked at any time for Defendant Tirehub, LLC in California from February 10, 2017 through Preliminary Approval, excluding any such individuals who opt out of this Settlement." ECF No. 55-1 at p. 23.

*Net Settlement Fund.* The $550,000 gross fund is non-reversionary, such that no amount will revert back to the defendant, and the employer's share of payroll taxes shall be funded independently by the company so it does not deplete the settlement proceeds. The "Net Settlement Amount" will be distributed to class members who do not opt out and will be calculated by deducting attorneys' fees and costs, Class Representative service awards claims administrator costs), and a payment to the LWDA for the release of PAGA claims. These distributions are further summarized as follows:

*Attorneys' Fees and Costs.* The settlement provides for an attorneys' fee award of $183,315, which is 33 1/3 % of the gross settlement amount, a typical

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    percentage[1] in the resolution of common fund wage and hour cases.[2] CVN has

2    devoted numerous hours to and faced significant risk in the prosecution of these

3    matters and, more importantly, made an extraordinary fund available to a large

4    number of otherwise-underrepresented, low paid workers. CVN also incurred

5    ordinary litigation costs over the past two years and, while the Agreement allowed

6    for a cap for such costs at $10,000. ECF No. 55 at 27, 29. Class Counsel maintained

7    and only seeks costs of $7,618.30. Notably, this amount does not account for

8    additional future expenses in overseeing the settlement process, making

9    appearances, filing court documents, ensuring claims administration compliance

10   with this Court's orders, responding to Class Members, CPAs, etc., Since costs in

11   the amount of $7,618.30 are reasonable and served to benefit the Class, they warrant

12   reimbursement.[3]

13   ***Enhancement Award.*** The Settlement also provides for an Enhancement

14   Award (aka "service payment") to Representative Plaintiff Donshea Jones of $5,000

15   for his time, risk and effort in bringing the lawsuit, representing the Class, and in

16

---

17   [1]   *See, e.g., Davis v. The Money Store, Inc.,* Case No. 99AS01716 (Sacramento Super. Ct. 2000) (33 1/3 % fee

18   award); *Haitz v. Meyer, et al.,* No. 572968-3 (Alameda Super. Ct., 1990) (45% fee award); *Ibrahimi v. Walgreen,* (Contra Costa Super. Ct. 2019) Case No. MSC16-02120) (35% fee award in wage and hour class action); *Rippee v.*

19   *Boston Mkt. Corp.,* 2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) (40% fee award); Exhibit "D" (Compendium of Settlement Item Awards).

20   [2]   California state courts, the Ninth Circuit and the United States Supreme Court are in agreement that awarding attorneys' fees as a percentage of the common fund is the proper method. *Serrano v. Priest,* 20 Cal.3d 25 (1977);

21   *Staten v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003); *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000); *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984) (in common fund cases, fees are not assessed against the unsuccessful

22   litigant (a.k.a. "**fee shifting**"), but rather, taken from the fund or damage recovery (a.k.a. "**fee spreading**")). In fact, the United States Supreme Court has always computed common fund fee awards on a percentage of the fund basis.

23   *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S Ct. 745 (1980); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777 (1939); *Central Railroad & Banking Co. of Georgia v. Pettus,* 113 U.S. 116, 5 S.Ct. 387 (1885). *Contrast, Hanlon*

24   *v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (the lodestar approach, enhanced by a multiplier, can be used as an alternative to the common fund theory when "there is no way to gauge the net value of the settlement or any

25   percentage thereof."; *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

26   [3]*In re United Energy Corp. Sec. Litig., Not Rpt'd in* F.Supp., 1989 WL 73211, * 6 (C.D. Cal. 1989) ("[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive

27   reimbursement of reasonable fees and expenses involved"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner Comm. Sec. Litig.,* 618

28   F.Supp. 735 (S.D.N.Y.1985); *In re GNC Shareholder Litig.: All Actions,* 668 F.Supp. 450, 452 (W.D. Pa. 1987).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

consideration for the claims released.[4] ECF No. 55 at 27-28. The proposed service payment is also reasonable given the minimal impact this amount will have on any settling Class Member's level of recovery.

**PAGA Allocation.** The Settlement provides for a payment of $40,000 for a release of PAGA claims, 75% of which will be remitted to the LWDA and 25% of which will remain in the Net Settlement Fund.[5] ECF No. 55 at 27, 30-31. The $40,000 allocation for PAGA penalties is reasonable under the circumstances and consistent with PAGA allocations in similar actions. Exhibit "D."

**Settlement Administration Costs.** The settlement administration costs are not to exceed $9,370.00 (Declaration of Laura Singh (On Behalf of CPT Group, Inc.) With Respect to Notification and Administration at ¶ 19) —a reasonable amount given the size of the Class and the work required to send the Notice, process settlement checks, establish and update a settlement website, and communicate extensively with class members and Class Counsel.

**Employer's Share of Payroll Taxes.** Defendant's share of payroll taxes, including, but not limited to FICA and FUTA, shall be paid <u>separately</u> from the Gross Settlement Fund. While many similar settlements allow the employer taxes to be paid from the Gross Settlement Fund, CVN specifically negotiated against that option.

**Tax Treatment of Individual Settlement Shares.** Class members' settlement shares will be allocated as 20% wages and 80% interest and statutory penalties for tax purposes. This allocation is reasonable given that the majority of the class claims were, arguably, for penalties (e.g., Labor Code §§ 203, 226), not underlying wages. Obviously, this particular tax treatment provides substantially additional monies to these already low-paid workers.

---

[4]  *See*, Declarations of each the Representative Plaintiff, submitted herewith.
[5]  *Cal. Labor Code* § 2699(i).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Results of the Notice Process.* In accordance with the Court's grant of preliminary approval, the Settlement Administrator sent the Notices by first class mail to all class members at their last known addresses, updated using the National Change of Address ("NCOA") Database. As detailed below, when Notices were returned by the post office, the claims administrator researched further, performed "skip traces" and then, when possible, re-mailed those Notices to better mailing addresses. Five individuals opted out of the Settlement. However, challenges to the Notice process and to the Settlement itself were non-existent.

*Distribution to Class.* The entire Net Settlement Fund will be disbursed to the Settlement Class. Individual settlement shares calculated based upon the number of Compensable Workweeks worked thereby during the Settlement Period, divided by the total number of Compensable Workweeks worked by all Settlement Class Members during said period.

*Effective Date.* The Effective Date of the Settlement means 61 days following the date on which the District Court's Order granting final approval of this Settlement Agreement ("Final Approval Order") becomes final. The District Court's Order becomes final upon the last of the following to occur: (1) when the period for filing any appeal, writ, intervention, or other proceeding opposing the Settlement has elapsed without any appeal, writ, intervention, or other proceeding having been filed; (2) when any appeal, writ, intervention, or other proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or (3) when any appeal, writ, intervention, or other proceeding has upheld the Court's Final Order and Judgment with no right to pursue further remedies or relief. ECF No. 55-1 p. 22.

*Funding.* No later than twenty-one (21) days after the Effective Date, Defendant shall provide payment to the Settlement Administrator to fund the Settlement, and Settlement Administrator shall mail the payments to the LWDA, the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Representative Plaintiff (for his enhancement award payment), Class Counsel (for
2  its awarded attorneys' fees and expenses), the Settlement Administrator (for its fees
3  and expenses) and Settlement Class Members. Settlement checks will remain valid
4  for 180 days from the date of issuance.

5      *Cy Pres.* If a Class Member does not cash his or her settlement check within
6  180 days from the date of issuance, the uncashed funds would be transmitted in
7  accordance with California Code of Civil Procedure Section 384(b) to California
8  State Bar Justice Gap Fund in San Francisco, CA.

9

10  ## III.    THE SETTLEMENT MERITS FINAL APPROVAL

11      When evaluating a class action settlement under California Code of Civil
12  Procedure § 382 for final approval, a court's inquiry focuses upon whether the
13  settlement is "fair, adequate and reasonable." *Wershba v. Apple Computer Inc.*, 91
14  Cal.App.4th 224, 244-245 (2004); *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794,
15  1801 (1996). A settlement is "fair, adequate and reasonable" and therefore merits
16  final approval when "the interests of the class are better served by the settlement
17  than by further litigation." *Manual for Complex Litigation* (4th ed. 2008) § 21.61,
18  462 ("*Manual*"). These conditions are met here.

19      While the Court possesses "broad discretion" in determining whether a
20  proposed class action settlement is fair, the Court's inquiry "must be limited to the
21  extent necessary to reach a reasoned judgment that the agreement is not the product
22  of fraud or overreaching by, or collusion between, the negotiation Parties, and that
23  the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."
24  *Dunk*, 48 Cal.App.4th at 1801 (quoting *Officers for Justice Civil Serv. Comm'n*, 688
25  F.2d 615, 625 (9th Cir. 1982)). A court's approval of a class action settlement will
26  only be reversed for a clear abuse of discretion. *Dunk*, 48 Cal.App.4th at 1802.

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## A.    THE SETTLEMENT IS PRESUMED FAIR

"[A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. *Dunk*, 48 Cal.App.4th at 1802 (citing Newberg & Conte, Newberg on Class Actions § 11.41, pp. 11-91). Here, the Settlement clearly meets these points and, as this Court noted in its preliminary approval Order, it is, thus, presumed fair.

The Settlement was reached through arm's length negotiations. The Settlement was only reached after significant litigation, a mediation session facilitated by a respected mediator with extensive experience in employment law, and then another additional mediation session with the same mediator.[6]

Moreover, Class Counsel conducted a thorough investigation and, well-apprised of the facts and risks, was able to garner a favorable result for the Settlement Class. Discovery efforts included the production and review of relevant documents through formal discovery as well as, informally,[7] key data points prior to mediation. The Settlement came at a stage in litigation where Plaintiff and Defendant were informed of the facts relevant to the case as well as the strengths and weaknesses of their respective positions and the risks of continued litigation.

The CVN firm has vast experience in similar litigation—having handled several hundred wage and hour class actions. Finally, as discussed, *infra* (Section IV), of the hundreds of class members, **no one objected**. Accordingly, the presumption that the Settlement is fair applies.

---

[6]    Indeed, in *Kullar*, the California Court of Appeal agreed that trial courts should give considerable weight to the competency of counsel and the involvement of a neutral mediator. *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (Cal. App. 1st Dist. 2008).

[7]    In many class actions, informally-exchanged discovery protects a defendant's proprietary and/or financial information, oftentimes allowing a richer and faster exchange of data calculated to determine the settlement value—putting the parties in a far better settlement position, so long as plaintiff's counsel is skilled in knowing what to request. Indeed, although formal discovery was indeed conducted, such is "not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1
2

**B.    AS THIS COURT PREVIOUSLY FOUND, THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL**

3    California Courts consider several factors in deciding whether to grant final

4    approval of a class action settlement, including (1) the amount offered in settlement;

5    (2) the risks inherent in continued litigation; (3) the complexity, expense, and likely

6    duration of the litigation absent settlement; (4) the extent of discovery completed

7    and the stage of the proceedings when settlement was reached; (5) the experience

8    and views of class counsel; and (6) the reaction of class members. *Dunk*, 48

9    Cal.App.4th at 1801; *Wershba*, 91 Cal.App.4th at 244-45; *Kullar v. Foot Locker*

10    *Retail, Inc.*, 168 Cal.App.4th 116, 119 (2008). Here, evaluation on each of these

11    factors favors final approval of the Settlement.

12
13

**1.    The Value of the Settlement and the Risks Inherent in Continued Litigation Favor Final Approval**

14    When evaluating the Settlement for fairness, the Court should weigh the

15    immediacy and certainty of substantial settlement proceeds against the risks inherent

16    in continued litigation. In making a fairness determination, "[t]he most important

17    factor is the strength of the case for plaintiff on the merits, balanced against the

18    amount offered in settlement." *Kullar*, 168 Cal.App.4th 116, 128 (2008). This

19    analysis often includes a comparison of the amount of the proposed settlement with

20    the value of the damages potentially recoverable if successful in further litigation,

21    appropriately discounted for the risk of not prevailing. *Dunk*, 48 Cal.App.4th at

22    1801-1802; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel*

23    *Corp.*, 485 F. Supp. 610, 617-619 (N.D. Cal. 1979).

24    **a.    Missed Meal and Rest Breaks**

25    The allegation that Defendant deprived Class Members of meal and rest

26    periods was the driving force of this litigation. However, as the company's policies

27    exhibited, TireHub had taken a variety of steps to adopt and enforce compliant meal

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

and rest break policies shortly after this case was filed. Indeed, CVN all but conceded this fact, and yet, maintained that the violations stemmed not only from the non-compliant policies, but also from scheduling practices whereby many workers were required to finish numerous deliveries on their route.

Despite Representative Plaintiff's allegations, however, the arguable lack of a *per se* violative policy that applied to the whole workforce presented significant challenges to class certification, as did Defendant's argument that this class of workers served at various locations, under varying degrees and styles of management oversight. And, even if the Court certified the class, Defendant would undoubtedly argue it need only make breaks *available* and that it had no obligation to *ensure* that breaks were actually taken. *White v. Starbucks Corp*., 497 F.Supp.2d 1080 (N.D. Cal. 2007).

Nevertheless, based on CVN's analysis of the available payroll records, it was determined that the number of pay periods in which meal and rest periods could be missed was as high as 30,188. Using this information and data provided by Defendant, an average hourly wage of $18, and assuming a violation every worker worked a full time shift five days per week, every week, the liability exposure possible for this claim could exceed $5.5 million. This recovery number is, of course, based on a variety of assumptions, none of which Defendant has agreed to, on schedules for this largely part-time workforce that would be unrealistic (i.e., that every worker worked every day for eight full hours), and on the assumption that all elements of this claim could be proven (as well as its frequency) at trial.

Indeed, perhaps the most questionable assumption is that roughly 10-11 potential meal periods per pay cycle (i.e., a violation every single working day) were actually "missed," not to mention represent a "violation" of Labor Code §512. Given that Class Members would rarely have made independent records, it is likely that many of any breaks missed would be, in fact, punch-in/punch-out errors or class

member neglect in punching in/out at all. Given that, it is very likely that many workers simply took their breaks without punching out properly or notifying management when they left for a break. Additionally, it is likely that many Class Members were afforded the chance for a break but simply elected not to take one for a myriad of reasons. These challenges—and the paucity of records—reveals that a substantial discount off CVN's original damages estimate was appropriate.

### b. <u>Waiting Time Penalties</u>

The strongest claims in this case were the meal and rest break claims, neither of which *conclusively* generates a "wage" to which a Labor Code § 203 claim could be tethered. The California Court of Appeal stated, *arguably in dicta*, that a meal break violation under Labor Code § 226.7 cannot support a "waiting time penalty" under Labor Code § 203. *Ling v. P.F. Chang's China Bistro, Inc*., 245 Cal.App.4th 1242, 1261 (2016); *Serrano v. Bay Bread LLC*, 2016 Cal. Super. LEXIS 8043 at *22 (June 29, 2016) (no published California case holds contrary to *Ling*); *Kirby v. Imoos Fire Protection, Inc.,* 53 Cal. 4th 1244 (2012) (failure to pay meal and rest period premiums cannot trigger waiting time penalties); *but see, In re Autozone, Inc. Wage and Hour Litig*., Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) (meal period payments constitute "wages," thus, supporting Labor Code §§ 201-203 claims).

Finally, Defendant would contend that Representative Plaintiff could not show the requisite "willful[ness]" under § 203. *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014); *Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1203-04 (2008)

Based on a typical eight-hour workday, on records showing that 304 Class Members were "severed" employees, and that their average hourly wage was $18, Defendant's liability could reach as high as $1.33 million for waiting time penalties. Given the state of the law, and that an unrealistic full eight-hour workday was used

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

to calculate this penalty for <u>all</u> severed workers, the value of this claim was discounted ***significantly***.

### c.    <u>Wage Statement Violations</u>

Although some federal court decisions have held break premiums under Labor Code § 226.7 can support a wage statement penalty under Labor Code § 226(e), there are no published California state court decisions issuing a similar holding. *Maldonado v. Epsiolon Plastics, Inc.,* 22 Cal.App.5th 1308, 1337 (2018) (meal and rest claims cannot support a class-wide claim for inaccurate wage statements); *Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal. March 12, 2015). In light of the California authority explaining that a violation of Labor Code § 226.7 cannot support a § 203 waiting time penalty, the same logic may apply to § 226 wage statement penalties, making those entirely unrecoverable in this litigation. Had this matter not settled, TireHub would have certainly argued this, as well as contended Representative Plaintiff cannot establish an "injury" resulting from TireHub's "knowing and intentional failure" to furnish wage statements (i.e., that included premium pay for missed breaks). Cal. Lab. Code § 226(e)(1).

Under § 226, Class Members may recover $50.00 for the initial violation and $100.00 for each subsequent violation. Based on data provided by Defendant and subsequent analysis thereof by CVN, Class Members stood to potentially recover $1.77 million if they fully prevailed on these claims at trial. Given the numerous elements Representative Plaintiff would be required to demonstrate, and anticipating TireHub's "penalties on penalties" argument, CVN's "reality check" and, thus, significant discount to the potential value of this claim, was appropriate.

### d.    <u>PAGA Penalties</u>

Representative Plaintiff also alleged that Defendant's conduct created liability under the Labor Code Private Attorneys' General Act ("PAGA"). PAGA claims are

COLE & VAN NOTE<br>ATTORNEYS AT LAW<br>555 12TH STREET, SUITE 2100<br>OAKLAND, CA 94607<br>TEL: (510) 891-9800

extraordinarily difficult to evaluate because there are several obstacles to the actual award of the civil penalty. First, it is arguably unclear whether penalties continue to accrue until the court finds a violation to exist. Second, Labor Code § 2699(e)(1) and (2) give trial courts immense discretion to access or lower the penalty amount. Cal. Labor Code § 2699(e)(2) Indeed, several courts have exercised their broad discretion and have dramatically limited PAGA awards. *See e.g., Fleming v. Covidien Inc*., 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011); *Thurman v. Bayshore Transit Mgmt*., 203 Cal.App.4th 1112, 1135-36 (2012); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp. 1058 (N.D. Cal. 2019). Third, defendants routinely argue that, when other statutory penalties have been imposed, additional penalties under PAGA are unjust.

Thus, while the PAGA calculation herein for approximately 17,898 pay periods could reach $7.09 million (i.e., a calculation identical here to the one for § 226 penalties), the likelihood of that sum ever being awarded is extremely slim. Given that PAGA penalties would likely be deemed duplicative of other penalties awardable here, given the extreme "haircuts" many courts are giving to PAGA penalties, and given the presence here of class action allegations, PAGA penalties were significantly discounted.

### e. <u>Summary</u>

In sum, assuming (liability and class certification) success on each of the claims, at the level hoped for by Representative Plaintiff, the claims could be as high as:

| Meal /Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
|---|---|---|---|---|
| ~$5.5M | ~$1.3M | ~$1.7M | ~$7M | ~$16M |

However, based on CVN's conversations with the named Plaintiff, knowledge of workflows, and typical conditions within the delivery and logistics industry and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

analysis of Defendant's meal and rest break policies, a number of deductions would be appropriate from those totals, due to:

- Meal/Rest Periods: Many workers worked below the threshold number of hours for meal or rest period entitlements, worked less than five days per week, and only missed breaks (when they did) out of choice or mis-punches. More likely, one to two violations per pay period is more realistic.

- Waiting Time Penalties: If not all workers had meal/rest period violations to begin with, worked less than 8 hours per day, the starting place for this penalty analysis needs to be discounted.

- Wage Statement Penalties: For the same reasons as those supporting a Waiting Time Penalty reduction, the top end/potential § 226 penalty level should be reduced, even before a liability analysis for them begins.

- PAGA: The penalties only apply if a predicate violation applies, which it oftentimes likely would not. Given that, the starting place for a PAGA analysis should be reduced;

Thus, *before even considering the likelihood of recovering these damages/penalties*, the analysis would look more like this:

| Meal/ Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
|---|---|---|---|---|
| $500K | $250K | $250K | $200K | $1.2M |

Although the total damages and penalties available to class members under either scenario are high, so were the risks and delays inherent in protracted litigation.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    And further litigation wouldn't necessarily have tipped the scales in favor of either

2    party since (a) significant discovery was already available to them and, as in all

3    litigation, (2) both good and bad facts would inevitably have come to light for each

4    side. What is certain, however, is that TireHub would have fought the action very

5    aggressively, thereby delaying the benefits now available through settlement to class

6    members for quite some time.

7         Instead, the Settlement provides an excellent result to class members after

8    deduction of attorneys' fees and costs, the LWDA's portion of the PAGA award,

9    Representative Plaintiff's enhancement awards and claims administration costs.

### 2.   The Complexity, Expense and Likely Duration of Continued Litigation Support Approval

12        In evaluating for fairness, the Court should weigh the benefits of settlement

13   against the expense and delay involved in achieving an equivalent or even more

14   favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Kullar*,

15   168 Cal.App.4th 116, 120 (2008). As California jurists have recognized, there exists

16   "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff,*

17   *Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (citing *Franklin v.*

18   *Kayrpo Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the

19   compromise and settlement of disputes")). The alternative to a class action, namely

20   numerous individual actions, could tax private and judicial resources for years.

21   Given the relatively modest, though not inconsequential, amount of damages

22   individual class members allegedly incurred (many class members worked for

23   Defendant for just a few days or weeks), it would be uneconomical to secure

24   individual legal representation, even for those with the resources to do so. But, here,

25   the Settlement provides *all* class members, regardless of their means, the opportunity

26   of monetary recovery in a prompt and efficient manner, without the risk of the Court

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  denying class certification and/or finding no liability, and these workers recovering
2  nothing at all.

3      Class Counsel also considered that, even if Plaintiff prevailed, on both class
4  certification and liability, the remaining processes could be lengthy and costly,
5  potentially including appeals. What's more, class action defendants may seek a writ
6  of mandate from an order granting class certification (*See, Cal. Code Civ. Proc.* §
7  904.1; *In re Cipro Cases I and II*, 121 Cal.App.4th 402, 409 (2004)), may drag out
8  the trial through bifurcation of issues, phasing of the trial, challenges to its
9  manageability, and the losing party there may take an appeal of any of these issues.
10 As such, even a successful judicial resolution at the trial court level can be just the
11 beginning of a lengthy, expensive process, stalling payments to class members for
12 years. This judicial purgatory is compounded by the risk of adverse appellate
13 rulings, which would remand the action to the trial court for further litigation,
14 possibly with negative precedent. The complexity, expense, and delay of continued
15 litigation in this matter supports final approval of the Settlement.

16

17      **3.    The Discovery and Factual Investigation Support Approval**

18      The Settlement comes at a point in the litigation where counsel for both
19 Plaintiff and Defendant had clear views of the strengths and weaknesses of their
20 respective cases. "[T]he extent of discovery completed and the stage of the
21 proceedings" are factors that courts consider in determining the fairness, adequacy
22 and reasonableness of a settlement. *Dunk*, 48 Cal.App.4th at 1794. CVN conducted
23 extensive pre-filing due diligence, including review of publicly available
24 information, conversations with witnesses, and review of prior case files by the CVN
25 firm. Class Counsel then litigated the Action aggressively, knowing the high stakes
26 involved, and obtained discovery formally and informally from several sources, all
27 of which produced important evidence in support of the decision to settle. The

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Parties have thoroughly investigated, and are sufficiently knowledgeable of the facts to form educated assessments regarding their respective positions and the value of the case.

### 4.    The Experience and Views of Counsel Favor Final Approval

Class Counsel supports the Settlement as fair, reasonable, and adequate, and believes it in the best interest of the class as a whole. Class Counsel has substantial experience prosecuting complex litigation and/or class action lawsuits, has prosecuted hundreds of such cases involving the same issues as presented here. As discussed above, Class Counsel is intimately familiar with the litigation, having conducted extensive investigation and negotiation on behalf of the class. The endorsement by well-informed and qualified counsel of a settlement as fair, adequate, and reasonable is entitled to significant weight. *Dunk*, 48 Cal.App.4th at 1802; *Ellis Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980); *Boyd*, 485 F. Supp 610, 617 (N.D. Cal. 1979).

### 5.    The Class Members' Reaction Favors Final Approval

Finally, when determining if a settlement is reasonable, a court looks to "the reaction of class members to the proposed settlement." *Dunk*, 48 Cal.App.4th at 1801; *Wershba*, 91 Cal.App.4th at 244-245; *Kullar*, 168 Cal.App.4th at 119. Here, class members' response to the settlement has been almost uniform; there have been **no objections**, further demonstrating that the Settlement is fair, adequate, and reasonable, and worthy of final approval.

## IV.    THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED

California statutory and case law vests the Court with discretion in fashioning an appropriate notice program. *Cal. Civ. Code* § 1781; *Cartt v. Superior Court*, 50 Cal.App.3d 960, 973-974 (1975). To protect the rights of absent class members, the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

parties must provide the class with the best notice practicable, but due process does not require actual notice to parties who cannot reasonably be identified. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (U.S. 1974); *Manual* § 21.311, n. 882 at 432; *Cal. Rules of Ct., Rule* 3.766(d).

The Court-approved Notice program met this standard and has now been fully implemented. The Settlement Administrator mailed and emailed the Notice Package to the entire class on June 20, 2023. Of the 541 mailed Notices, only 7 Notices remain undeliverable.

While the Notice allowed class members 45 days to either opt out or object, no claim form was required for class members to participate in the Settlement. This approach was chosen so as to avoid unnecessary confusion, maximize class member recoveries, and reduce administrative costs.

It should be noted that the lack of and objectors is not tantamount to a lack of interest in the Settlement, however. Indeed, not only did class members not reject the Settlement, they embraced it. With regard to the Court's concern in granting preliminary approval, it is Plaintiff's position that those individuals to whom notices were undeliverable may be excluded from the release.

## V.    AN AWARD OF ATTORNEYS' FEES AND COSTS IS APPROPRIATE

### A.    A COMMON FUND FEE AWARD IS WARRANTED

Public policy promotes approval of fee requests since "[t]he function of an award of attorney's fees is to encourage the bringing of meritorious…claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (internal quotation marks and citations omitted). Additionally, attorneys' fees are

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  awarded based on the value of the common benefit made available to the class,

2  regardless of whether the settlement contains a reversion provision. *Williams v.*

3  *MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Boeing Co. v. Van*

4  *Gemert*, 44 U.S. 472, 480-81 (1980). In this case, there will be no reversion of any

5  kind to the Defendant, further rendering the fees request appropriate.

6      Specifically, the settlement provides for an attorneys' fee award of 33 1/3%

7  of the settlement amount, a typical percentage in the resolution of common fund

8  cases.[8] CVN has devoted numerous hours to and faced significant risk[9] in the

9  prosecution of this matter and, more importantly, made an extraordinary fund

10  available to a large number of otherwise-underrepresented, low paid workers.

11      The "common fund" method, or "percentage-of-the-benefit" analysis,

12  calculates attorneys' fees based on a percentage of the common benefit to the class.

13  *In re Consumer Privacy Cases,* 175 Cal.App.4th 545 (2009); *Serrano v. Priest*, 20

14  Cal.3d 25 (1977). In cases where a common fund has been created—i.e., where each

15  class member will "receive a mathematically ascertainable payment"[10]—California

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

22  [8]    *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. 2013) (33% fee award of gross fund); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. 2014) (33 1/3% fee award in wage and hour class action); *Morris v. Lifescan, Inc.* 54 Fed.Appx. 663 (9th Cir. 2003) (affirming 33% fee award); *Savage v. California Family Health LLC*, Case No. 34-2016-00192282-CU-OE-GDS (Sacramento Super. Ct. 2017) (1/3 fee award in wage and hour class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (33 1/3% award in wage and hour class action); *See*, Exhibit "D" (Compendium of Settlement Item Awards).

[9]    CVN undertook this matter solely on a contingent basis, with no guarantee regarding the potential duration of the litigation or even the ultimate reimbursement of fees or costs. Looking, *ad hoc*, at the fact that a settlement did occur, doesn't change the risks accepted at the inception of the case or at any point along its timeline. Nor , looking more broadly, does it account for the countless cases that do not settle, do not settle well and/or are dismissed after sometimes thousands of hours of work thereon.

[10]    *Vasquez*, 266 F.R.D. 482 at *491 (E.D. Cal. 2010).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

state courts,[11] the Ninth Circuit[12] and the United States Supreme Court[13] agree that awarding attorneys' fees as a percentage of the common fund is the proper method.[14]

As expressed by the Third Circuit's Task Force on the Selection of Class Counsel,[15] in Conte and Newberg's treatise on class actions ("*Newberg*")[16] and, *inter alia*, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the rationale for this is commonsensical: in common fund cases, fees are not assessed *against* the unsuccessful litigant (a.k.a. "fee shifting"), but rather, are *taken from the fund* or damage recovery (a.k.a. "fee spreading"). In contrast to the calculation of a statutory fee, payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success and represents the benchmark from which a fee will be awarded. *5 Newberg* § 15.53 at 183. Consequently, the analysis in a common fund case focuses not on the plaintiff's position as "prevailing parties," but on a showing that the fund conferred a benefit upon the class which resulted from their efforts. *Id.,* § 2.06 at 40.[17] As explained above, the United States Supreme Court

---

[11]   *Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000); *Serrano v. Priest*, 20 Cal.3d 25 (1977).

[12]   *Staten v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

[13]   The United States Supreme Court has always computed common fund fee awards on a percentage of the fund basis. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S Ct. 745 (1980); *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777 (1939).

[14]   A lodestar approach (enhanced by a multiplier) can be used as an alternative to the common fund theory when "there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

[15]   *See, Third Circuit Task Force on the Selection of Class Counsel* (Final Report, January 2002), available at https://www.ca3.uscourts.gov/sites/ca3/files/final%20report%20of%20third%20circuit%20task%20force.pdf (recommending that all fee awards in common fund cases be awarded as a percentage of the fund, but that a lodestar analysis continue to be the applicable method for determining statutory fee shifting awards); *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (hardcopy not exhibited here due to length of document).

[16]   *Newberg on Class Actions* (5th ed. 2017).

[17]   The common fund doctrine is "based on the commonsense notion that the 'one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.'" *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc*., 127 Cal.App.4th 387, 397 (2005) (internal citation omitted); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," and class members who benefit from a lawsuit "without contributing to its cost are unjustly enriched at the successful litigant's expense.").

1  has specifically endorsed the use of this method in paradigmatic common fund cases

2  such as this.[18]

3     The *Serrano* factors further justify the common fund fee award.[19] *Serrano*

4  explained the trial courts may consider additional factors when considering a fee

5  award: (1) time and labor required; (2) the contingent nature of the fee agreement;

6  (3) extent to which the nature of the litigation precluded other employment by the

7  attorneys; (4) experience, reputation, and ability of the attorneys who performed

8  services in the litigation and their displayed skill; (5) amount involved and the results

9  obtained; and (6) the informed consent of the client to the fee agreement. *Serrano*,

10  20 Cal.3d at 49.

11     Class Counsel has invested considerable amounts of time and labor in

12  litigating the Class' claims. CVN incurred nearly 538.8 hours in prosecuting this

13  litigation, totaling $276,432. In so doing, Class Counsel drew on its collective

14  experience litigating wage and hour class actions against employers very much like

15  this one[20] in order to minimize wasted effort. Class Counsel's efforts include, *inter*

16  *alia*, conducting written discovery (both formal and informal), production and

17  review of documents, obtaining data for mediation, interviews with putative class

18  members, a full day mediation session and hard-fought negotiations, and creative

19  ways of publicizing this case and reaching witnesses so as to put the maximum

20  pressure on Defendant. CVN harnessed evidence from all available resources,

21  conducted significant discovery, designed an outreach campaign to "fill in the gaps."

22  Only after that work did it use its skills and experience to negotiate an outstanding

23  result for numerous class members.[21]

24

25  [18]  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (". . . under the "common fund doctrine," …a reasonable [attorneys'] fee is based on a percentage of the fund bestowed on the class…").

26  [19]  *Serrano v. Priest*, 20 Cal.3d 25 (1977); *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996).
   [20]  Exhibit "B," CVN's Professional Resume.

27  [21]  Attorney fee awards in common funds cases are intended to compensate class counsel for work performed both before *and after* the date of judgment. In nearly every class action, the efforts during litigation and in pursuing approval

28  of the settlement are only part of the overall work picture. Post-judgment, class counsel is required to stay in close contact with the claims administrator to ensure payment of the settlement proceeds, to communicate with class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    The fee award is further supported by the contingency risk assumed in prosecuting

2  the case.[22] The California Supreme Court has recognized that attorney fee awards

3  should be enhanced to compensate attorneys for the risks of loss involved in

4  contingency cases. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001); *Graciano v.*

5  *Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 154 (2006); *See also, In re*

6  *Consumer Privacy Cases*, 175 Cal.App.4th at 556.

7    CVN undertook this matter solely on a contingent basis, with no guarantee

8  regarding the potential duration of the litigation or the ultimate recovery of fees or

9  costs. While Class Counsel believes the claims in this case are meritorious, it also

10  recognized the factual and legal challenges involved in complex litigation, generally,

11  as well as the specific risks posed by the facts in this case. While attorneys who

12  represent corporations are routinely paid (often quite handsomely) on an hourly

13  basis, plaintiffs in wage and hour cases can rarely afford to pay their attorneys by

14  the hour, especially if they expect to be represented by a law firm well known for

15  achieving good results. As a firm committed to wage and hour class actions,

16  including the one at hand, Class Counsel must accept these cases on a wholly

17  contingent basis, with no guarantee of recovery of fees, or even the reimbursement

18  of litigation costs. As California case law recognizes, Class Counsel's commitment

19  to this litigation should not be assessed in a vacuum.[23] The countless hours Class

20

21

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

22  members, with their CPAs (regarding the tax treatment of settlement proceeds), even with other attorneys, to report

23  compliance with the terms of the Court's final approval order thereon and myriad other tasks. Although rarely discussed in connection with requests for attorneys' fees and costs, it's not unusual for some of these efforts to take place years after judgment. With a class of this magnitude, these are efforts that will assuredly be required by CVN.

24  [22]  California courts "agree...that 'riskiness,' difficulty or contingent nature of the litigation is a relevant factor in determining a reasonable attorney fee award." *Salton Bay Marina, Inc.*, 172 Cal.App.3d at 955 (*citing La Mesa-Spring*

25  *Valley School Dist. of San Diego County v. Nobuo Otsuka*, 57 Cal. 2d 309, 316 (1962); *See also, In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997).

26  [23]  *Glendora Community Redevelopment Agency*, 155 Cal.App.3d at 475 (recognizing that "a busy lawyer" with a good "reputation" might be "reluctant to accept the employment because of the preclusion of other business"); *Cal.*

27  *Rules Prof. Conduct, R.* 4-200 (B)(4) (when determining whether a fee is appropriate, individual attorneys must consider "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude

28  other employment by the member").

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

1    Counsel spent on litigation, investigation and settlement efforts in this case
2    prevented it from pursuing other hourly or contingency fee-based work.

3         The experience and ability of Class Counsel were essential to the settlement
4    achieved here. Class Counsel developed an extensive factual record, convinced
5    Defendant of its exposure, and expertly negotiated the terms of the Settlement. Only
6    counsel well versed in class action litigation and wage and hour law in this
7    jurisdiction could have effectively marshaled the evidence and presented it to
8    achieve this Settlement.[24] "The overall result and benefit to the class from the
9    litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*,
10   559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Here, while acknowledging Defendant
11   was indeed making substantial strides toward providing meal and rest breaks
12   consistently to its guards, Class Counsel was still able to secure a great result for
13   class members.

14        Furthermore, the agreement of Plaintiff to enter into a contingency fee
15   arrangement supports the requested attorney fee award. *Glendora*, 155 Cal.App.3d
16   at 472. Here, Plaintiff entered into a consensual contingency fee agreement and also
17   expressly endorses Class Counsel's request for attorneys' fees and costs.
18   Additionally, class members have been notified of the requested attorneys' fees and
19   costs by means of the Notice, and only one person "objected."[25] In light of the work
20   performed, risks assumed and results achieved, it is clear that clear that Class
21   Counsel's fee request is supported and should be approved.

22

23

---

[24] Exhibit "B," CVN's Professional Resume. The fact that CVN has likely handled more security guard class actions than any firm in California, not to mention having co-prosecuted the ABM litigation over a period of 12 years was certainly not lost on the defendant here, and undoubtedly demonstrated CVN's commitment to litigate the instant matter through judgment and appeals if necessary.
[25] Litigants are familiar with one-third fee recoveries being the norm–this percentage (or higher awards of 35% or 40%) being common in employment, personal injury and other areas of litigation within the commonplace experience of these class members. Also, as suggested by the compendium of examples cited throughout this brief, it is a judicial benchmark as well. Indeed, "[e]mpirical studies show that…fee awards in class actions average around one-third of the recovery." *4 Newberg* § 14.6

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    **B.    CLASS COUNSEL'S COSTS ARE REASONABLE**

2    Over the course of this litigation, Class Counsel incurred ordinary litigation

3    costs over the past two years totaling $7,618.30, and anticipates incurring additional

4    expenses overseeing the settlement process, making future appearances, etc.[26] While

5    the Settlement provided a ceiling for litigation costs of $10,000, Class Counsel kept

6    costs at bay and, thus, only seeks costs of $7,618.30. Notably, this amount does not

7    account for additional future expenses in overseeing the settlement process, making

8    appearances, filing court documents, ensuring claims administration compliance

9    with this Court's orders, responding to class members, CPAs, etc. Since these costs

10   are reasonable and served to benefit the class, they warrant reimbursement.[27]

11

12   **VI.    REPRESENTATIVE PLAINTIFF DESERVES THE PROPOSED
     ENHANCEMENT AWARD**

13

14   The Settlement further provides for, and Representative Plaintiff now

15   requests, an enhancement award of $5,000. Service awards to the lead plaintiffs in

     class action litigation are commonplace and are "intended to compensate class

16   representatives for work done on behalf of the class, to make up for financial or

17   reputational risk undertaken in bringing the action,[28] and, sometimes, to recognize

18   their willingness to act as a private attorney general." Service awards "are intended

19   to advance public policy by encouraging individuals to come forward and perform

20   their civic duty in protecting the rights of the class and to compensate class

21

22

23   [26]    Exhibit "C," CVN's Cost Journal.

     [27]    *In re United Energy Corp. Sec. Litig.*, *Not Rpt'd in* F.Supp., 1989 WL 73211, * 6 (C.D. Cal. 1989) ("[a]n attorney

24   who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive
     reimbursement of reasonable fees and expenses involved"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The
     prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner Comm. Sec. Litig.*, 618

25   F.Supp. 735 (S.D.N.Y.1985); *In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. 450, 452 (W.D. Pa. 1987).

     [28]    Plaintiff risked being "blacklisted" by other future employers for having sued this defendant in a class action. As

26   well stated by a New York Southern District Court: "[T]he fact that a plaintiff has filed a federal lawsuit is searchable
     on the internet and may become known to prospective employers when evaluating the person . . . Even where there is

27   not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for
     assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings LLC*, 2011 U.S. Dist.

28   LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

representatives for their time, effort and inconvenience …Federal authority is in accord."[29]

Courts in California may consider the following factors in determining the appropriateness of such an award: (1) the risk to the class representative in commencing suit; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The proposed service awards is reasonable given the work the Representative Plaintiff performed on behalf of fellow class members, the risks that he faced and continued to be faced with for his participation in the litigation (e.g., retaliation from future employers), and the minimal impact the request will have on the amount of any class member's level of recovery. As detailed in his declaration, submitted herewith, Mr. Jones initiated his action and devoted considerable time thereto. Representative Plaintiff assumed the risk that future employment prospects might be diminished with his attachment to this class action case and waived rights greater than those waived by the absent class members. Finally, the award will not significantly reduce the settlement funds available to them. For these reasons, the service award should be approved.

## VII. REIMBURSEMENT OF ADMINISTRATION FEES IS APPROPRIATE

Representative Plaintiff respectfully requests payment of CPT Group's settlement administration costs and fees be approved. By the time of preliminary settlement approval, CPT Group had submitted a competitive bid of $9,370.00—a very reasonable amount given the size of the class and the work required to send the

[29] *In re California Indirect Purchases*, 1998 WL 1031494, 11 (Alameda Super. Ct. 1998) (internal citations omitted).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Notice, process settlement checks, establish a website, and communicate with class

2  members and counsel. In the end, CPT Group was selected based upon its price quote

3  as well as its proven skill in handling prior settlement administrations.

4

5  **VII.  CONCLUSION**

6        Based upon the foregoing, Representative Plaintiff respectfully requests the

7  Court grant final approval of the Settlement and approve Class Counsel's application

8  for attorneys' fees and costs, the requested service award to the named Plaintiff, the

9  PAGA award, and reimbursement of the settlement administration costs.

10

11  Dated: September 8, 2023            **COLE & VAN NOTE**

12

13                          By:   */s/ Laura Van Note*
                                  Laura Van Note, Esq.
14                                Class Counsel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Memo. of Points and Authorities ISO Plaintiff's Motion for Final Class Action Settlement Approval