1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONSHEA JONES, individually and on            No.  2:21-cv-0564 DB
     behalf of all others similarly situated,
12

13                  Plaintiff,                      ORDER

14        v.

15   TIREHUB LLC,

16                  Defendant.

17

18          Each of the parties in the above-captioned case has consented to proceed before a United

19   States Magistrate Judge.  See U.S.C. § 636(c).  Accordingly, this matter has been reassigned to

20   the undersigned for all purposes.  (ECF No. 61.)  This action came before the court on November

21   17, 2023, for hearing of plaintiff's unopposed motion for final approval of class action settlement

22   and class member Reynaud Lozada's amended motion for exclusion.  (ECF No. 89.)  Attorney

23   Laura Van Note appeared via Zoom on behalf of the plaintiff.  Attorney Penny Chen appeared via

24   Zoom on behalf of defendant.  And attorney Eugene Lee appeared on behalf of class member

25   Reynaud Lozada.

26          Upon consideration of the arguments on file and those made at the hearing, and for the

27   reasons set forth on the record at that hearing and below, the court will grant both motions as

28   articulated below.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BACKGROUND

Plaintiff commenced this action on February 10, 2021, by filing a complaint in the Solano County Superior Court.  (ECF No. 1-3 at 6.[1])  The matter was removed to this court on March 26, 2021, pursuant to the Class Action Fairness Act of 2005.  (ECF No. 1 at 2.)  Plaintiff is proceeding on a second amended complaint filed on August 16, 2021.  (ECF No. 22.)

The second amended complaint alleged the following claims against defendant Tirehub, LLC: (1) failure to pay wages; (2) failure to provide meal and rest periods; (3) failure to provide accurate itemized wage statements; (4) failure to pay wages on termination; (5) unfair business practices based on the foregoing; and (9) California's Private Attorneys General Act ("PAGA").  (Id. at 12-22.)

Defendant filed an answer on September 7, 2021.  (ECF No. 25.)  On February 2, 2023, plaintiff filed a motion for preliminary approval of a class action settlement.  (ECF No. 55.)  Defendant did not file a statement of opposition.  On May 26, 2023, the court granted plaintiff's motion for preliminary approval.  (ECF No. 65.)  The order certified a class of 458 employees consisting of:

> Plaintiff and all persons employed by Defendant as non-exempt employees on or after February 10, 2017, to the date of this order, excluding any individual who opts out of the settlement.

(Id. at 10.)

The terms of the settlement provided that defendant would pay a gross settlement amount of $550,000 to resolve the claims of class members who do not opt out.  (Id. at 6.)  The following deductions would be subtracted from the gross settlement amount[2]:

- $40,000 PAGA payment pursuant to California Labor Code § 2698 et seq., distributed 75% to the California Labor and Workforce Development Agency and 25% to Net Settlement Fund.

////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] Defendant's share of the payroll taxes will be paid separately from the Gross Settlement Fund and Settlement Class Members settlement shares will be allocated as 20% wages and 80% interest for tax purposes.  (ECF No. 55 at 18.)

- Administrative Expenses not to exceed $9,370.

- Employee's Taxes and Required Withholdings including federal, state, or local payroll taxes.

- Class Attorney Fees of 33.5% of the gross settlement, ($183,315.00) and Expenses not to exceed $10,000.

- Incentive Award to plaintiff of up to $5,000.

(Id. at 6-7.)

Each class participant would receive a pro rata share of the net settlement amount based on the number of Compensable Workweeks worked during the Settlement period divided by the total number of Compensable Workweeks worked by all Settlement Class Members during the period.  (Id. at 7.)

Class participants would be given 180 days to cash their settlement checks.  (Id.)  Class participants had until July 20, 2023, to mail written requests to opt out.  (ECF No. 76-2 at 9.)  If more than 5% of class members opted-out of the settlement, defendant could withdraw from the settlement.  (ECF No. 65 at 7.)  CPT Group, Inc., would be responsible for the administration of the settlement.  (Id.)  The court also advised the parties with respect to "concerns going forward," requesting sufficient briefing with respect to attorneys' fees, plaintiff's incentive award, discovery conducted, notice, and enforcement.  (Id. at 8-9.)

On September 8, 2023, plaintiff filed the pending motion for final approval of the class action settlement.  (ECF No. 73.)  On October 10, 2023, class member Reynaud Lozada filed a motion for exclusion and an amended motion for exclusion.  (ECF Nos. 75 & 76.)  The matter came for hearing before the court on November 17, 2023.  (ECF No. 89.)  Apart from the amended motion for exclusion filed by Reynaud Lozada, no one appeared at the November 17, 2023 hearing to oppose approval of the class action settlement nor has any written opposition been filed.

**LEGAL STANDARDS**

The settlement of class actions is supported by strong judicial policy.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, "[t]o guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval

3

1  of all class action settlements, which may be granted only after a fairness hearing and a

2  determination that the settlement taken as a whole is fair, reasonable, and adequate." In re

3  Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011).

4  "It is the settlement taken as a whole, rather than the individual component parts, that

5  must be examined for overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

6  1998) (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th

7  Cir. 1982)). "Where, as here, the parties reach a settlement before class certification, the district

8  court must apply a 'higher standard of fairness.'" Cotter v. Lyft, Inc., 176 F.Supp.3d 930, 935

9  (N.D. Cal. 2016) (quoting Hanlon, 150 F.3d at 1026). In this context, "'courts must peruse the

10  proposed compromise to ratify both the propriety of the certification and the fairness of the

11  settlement.'" In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability

12  Litigation, 895 F.3d 597, 606 (9th Cir. 2018) (quoting Staton v. Boeing Co., 327 F.3d 938, 952

13  (9th Cir. 2003)). "The factors and warning signs identified in Hanlon, Staton, In re Bluetooth,

14  and other cases are useful, but in the end are just guideposts." Id. at 611.

15  "District courts have interpreted Rule 23(e) to require a two-step process for the approval

16  of class action settlements: 'the Court first determines whether a proposed class action settlement

17  deserves preliminary approval and then, after notice is given to class members, whether final

18  approval is warranted.'" In re High-Tech Emp. Antitrust Litig., No. 11-cv-02509-LHK, 2014 WL

19  3917126, at *3 (N.D. Cal. Aug. 8, 2014) (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV,

20  Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

21  "At the final approval stage, the primary inquiry is whether the proposed settlement is

22  'fair, adequate, and free from collusion.'" Carlin v. DairyAmerica, Inc., 380 F.Supp.3d 998,

23  1008-09 (E.D. Cal. 2019) (quoting Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012)).

24  Although the assessment "will naturally vary from case to case," courts usually weigh:

25

26

27

28

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

4

In re Bluetooth, 654 F.3d at 946 (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  "'The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case.'"  In re Volkswagen, 895 F.3d at 611 (quoting Officers for Justice, 688 F.2d at 625).

## ANALYSIS

### I.      Lozada's Motion for Exclusion

As noted above, class members had until July 20, 2023, to seek to opt out.  On October 10, 2023, Reynaud Lozada filed a motion seeking exclusion from the class.  (ECF Nos. 75 & 76.) Upon a showing of "excusable neglect," the court may extend the time allowed for a class member to opt out of a settlement.  See Fed. R. Civ. P. 6(b), 60(b)(1); Silber v. Mabon, 18 F.3d 1449, 1455 (9th Cir. 1994).

> In the context of a tardy opt-out from a class action settlement, we have specifically identified as the relevant "excusable neglect" factors "the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt-out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment."

Volkswagen, 895 F.3d at 618.

Here, the court finds that Lozada has shown excusable neglect.  While it is true that the Settlement Administrator used best practicable notice procedures, it also appears true that Lozada did not actually receive notice until September 22, 2023.  (Lozada Decl. (ECF No. 76-2) at 2.) Lozada's motion for exclusion was filed shortly thereafter on October 10, 2023, despite the challenges faced by Lozada's counsel as a solo practitioner who "has not appeared in any federal court . . . since 2011."  (Lozada Reply (ECF No. 87) at 1.)  The reason Lozada did not receive timely notice is that the first attempt to notify Lozada was sent to an address he had not lived at for many years and the second attempt was mailed to an address he never lived at.  (Id. at 2.)

Moreover, at the November 17, 2023, hearing it was reported that only a few individuals have sought to opt out.  And it does not appear that allowing Lozada's opt out would affect

////

1  settlement or the finality of the judgment.  On these facts alone, the court finds that Lozada has

2  shown excusable neglect.

3        However, the court provides some relevant background information provided by the

4  parties for additional context.  According to Lozada, prior to the commencement of this action

5  Lozada filed a wage claim against defendant, utilizing the services of the attorney representing

6  him here.  (Am. Mot. Ex. (ECF No. 76-1) at 2.)  Lozada's counsel and defendant's counsel

7  participated in a settlement conference before the California Labor Commission on February 12,

8  2020.  (Id.)  Lozada emailed defendant his correct home address as part of those proceedings.

9  (Id.)  And during his employment Lozada provided defendant his correct address.  (Id.)  However,

10  Lozada only learned of this class action when the Labor Commission emailed Lozada's attorney

11  on September 22, 2023.  (Id.)

12        Irrespective of the accuracy of these allegations, Lozada has demonstrated excusable

13  neglect.  Accordingly, Lozada's amended motion for exclusion will be granted.

14  **II.**    **Class Certification**

15        "A party seeking class certification must satisfy the requirements of Federal Rule of Civil

16  Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  Wang

17  v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party

18  seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and

19  adequacy of representation."  Id.  The "specifications of the Rule . . . demand undiluted, even

20  heightened, attention in the settlement context."  Amchem Products, Inc. v. Windsor, 521 U.S.

21  591, 620 (1997).

22      **A.**    **Numerosity**

23        A proposed class must be "so numerous that joinder of all members is impracticable."

24  Fed. R. Civ. P. 23(a)(1).  "Courts have found the requirement satisfied when the class comprises

25  of as few as thirty-nine members, or where joining all class members would serve only to impose

26  financial burdens and clog the court's docket."  Goodwin v. Winn Management Group LLC, No.

27  1:15-cv-0606 DAD EPG, 2017 WL 3173006, at *5 (E.D. Cal. July 26, 2017).

28  ////

1   Here, plaintiff is seeking to certify a class of 536 members.  (Prop. Ord (ECF No. 73-4) at

2   1.)  The court originally found the numerosity requirement was satisfied by a proposed class of

3   458 members.  (ECF No. 65 at 10.)  Given that the proposed class is now larger, the court finds

4   that the numerosity requirement is satisfied.

5   **B.    Commonality**

6   The requirement for commonality is satisfied when "there are questions of law or fact that

7   are common to the class."  Fed. R. Civ. P. 23(a)(2).  "[T]he key inquiry is not whether the

8   plaintiffs have raised common questions," but "whether class treatment will 'generate common

9   answers apt to drive the resolution of the litigation.'"  Arredondo v. Delano Farms Co., 301

10  F.R.D. 493, 503 (E.D. Cal. 2014) (quoting Abdullah v. U.S. Sec. Assocs., 731 F.3d 952, 957 (9th

11  Cir. 2013)); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("What matters to

12  class certification . . . is not the raising of common 'questions'—even in droves—but, rather the

13  capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

14  litigation.").

15  Here, classwide proceeding would generate the common answer to whether defendant

16  failed to pay these plaintiffs wages, failed to provide meal and rest periods, failed to provide

17  accurate itemized wage statements, etc.  "Because it therefore appears that the same alleged

18  conduct of defendant would form the basis of each of the plaintiff's claims class relief based on

19  commonality is appropriate."  Murillo v. Pacific Gas & Elec. Co., 266 F.R.D. 468, 475 (E.D. Cal.

20  2010) (citation, quotation, and alteration omitted).  Therefore, the court finds the commonality

21  requirement satisfied.

22  **C.    Typicality**

23  "The test of typicality 'is whether other members have the same or similar injury, whether

24  the action is based on conduct which is not unique to the named plaintiffs, and whether other

25  class members have been injured by the same course of conduct.'"  Hanon v. Dataproducts Corp.,

26  976 F.2d 497, 508 (9th Cir. 1992).  Here, plaintiff and the class members were allegedly

27  subjected to the same practices resulting in the same or similar injuries.  Accordingly, the court

28  finds the typicality requirement satisfied.

7

1

### D.       Adequacy

2       "To satisfy constitutional due process concerns, absent class members must be afforded

3    adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at

4    1020.  "To determine whether named plaintiffs will adequately represent a class, courts must

5    resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest

6    with other class members and (2) will the named plaintiffs and their counsel prosecute the action

7    vigorously on behalf of the class?'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir.

8    2011) (quoting Hanlon, 150 F.3d at 1020).

9       Here, there is nothing before the court to suggest that the named plaintiff or class counsel

10   has any conflict of interest with any class member.  To the contrary, it appears that plaintiff has

11   the same interest and injury as the other class members.  And plaintiff's counsel are experienced

12   litigators of class actions involving the precise claims here, i.e., wage and hour disputes involving

13   the denial of meal and rest periods.  See ECF No. 73-1 at 54-62.  Accordingly, the court finds the

14   adequacy requirement satisfied.

15       ### E.       Rule 23(b)(3)

16       Having satisfied the requirements for Rule 23(a), plaintiff must also satisfy at least one of

17   the categories under Rule 23(b).  "To qualify for certification under Rule 23(b)(3), a class must

18   meet two requirements beyond the Rule 23(a) prerequisites: Common questions must

19   'predominate over any questions affecting only individual members'; and class resolution must be

20   'superior to other available methods for the fair and efficient adjudication of the controversy.'"

21   Amchem, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

22       "When common questions present a significant aspect of the case and they can be

23   resolved for all members of the class in a single adjudication, there is clear justification for

24   handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at

25   1022 (quotation omitted).  Here, plaintiff challenges defendant's uniform employment policies.

26   "Class actions in which a defendant's uniform policies are challenged generally satisfy the

27   predominance requirement of Rule 23(b)(3)." Goodwin, 2017 WL 3173006, at *7.

28   ////

In analyzing superiority, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum, and potential difficulties in managing the class action-although the last two considerations are not relevant in the settlement context." Palacios v. Penny Newman Grain, Inc., No. 1:14-cv-1804 KJM, 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2015).

Here, forcing class members to proceed individually on identical claims, in which the relief is relatively small, is antagonistic to the class members' interest. Moreover, aside from the matter involving Reynaud Lozada, the court is aware of no other litigation in progress. Accordingly, the court finds that a class action is superior to having the plaintiffs proceeding individually.

### F.   Conclusion

Having considered the relevant factors the court finds that plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(3) and grants final approval of the class.

## II.   Plaintiff's Motion For Final Approval of The Settlement

### A.   Strength of Plaintiff's Case

In evaluating the strength of the plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." In re Wash. Pub. Power Supply Sys. Secs. Litig., 720 F.Supp. 1379, 1388 (D. Ariz. 1989). Indeed, because no evidence has been presented and the "settlements were induced in large part by the very uncertainty as to what the outcome would be, had litigation continued" the court could not do so. Id. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Id.

Here, the court agrees that plaintiff "faced significant risk in the prosecution of" this action. (Pl.'s Mot. FA (ECF No. 73) at 14.) For example, defendant likely would have argued that plaintiff failed to show that any violation of California Labor Code § 203 was willful. See generally Willner v. Manpower Inc., 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) ("a 'knowing and

1   intentional' violation requires a showing that the defendant knew that facts existed that brought

2   its actions or omissions within the provisions of section 226(a)").  Defendant may also have

3   argued that because "there are no published California state court decisions" holding that meal

4   and rest claims support a class-wide claim for inaccurate wage statements.  See generally

5   Maldonado v. Epsilon Plastics, Inc., 22 Cal.App.5th 1308, 1337 (2018) ("only the absence of the

6   hours worked will give rise to an inference of injury; the absence of accurate wages earned will

7   be remedied by the violated wage and hour law itself").  Additionally, defendant likely would

8   have asked the court to exercise discretion and reduce any PAGA award.  See generally Ramirez

9   v. Benito Valley Farms, LLC, Case No. 16-CV-4708 LHK, 2017 WL 3670794, at *3 (N.D. Cal.

10  Aug. 25, 2017) ("PAGA also states that courts may exercise their discretion to lower the amount

11  of civil penalties awarded").

12        Accordingly, this factor favors approving the settlement.

13        **B.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation;
          Risk of Maintaining Class Status**

14

15        "Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain

16  results.'"  Morales v. Stevco, Inc., No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *10 (E.D.

17  Cal. Nov. 10, 2011) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 526).  "'[I]t must not be

18  overlooked that voluntary conciliation and settlement are the preferred means of dispute

19  resolution.  This is especially true in complex class action litigation[.]'"  In re Syncor ERISA

20  Litigation, 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting Officers for Justice, 688 F.2d at 625).

21        As noted by plaintiff, settlement provides all class members, even those without the

22  resources to secure legal representation and who may have only worked for defendant for a few

23  days, to monetary recovery.  (Pl.'s Mot. FA (ECF No. 73) at 25.)  In contrast, further litigation

24  could result in a protracted legal battle including a writ of mandate over an order granting class

25  certification, bifurcated proceedings, phasing, and appellate review, which includes the possibility

26  that a favorable judgement for the plaintiffs could be undone and plaintiffs forced to begin again.

27  Under these circumstances, this factor weighs in favor of approving the settlement.

28  ////

1

     **C.**    **Amount Offered in Settlement**

2

     "The proposed settlement is not to be judged against a hypothetical or speculative measure

3

of what might have been achieved by the negotiators."  Officers for Justice, 688 F.2d at 625.

4

Moreover, "[i]t is established that the absence of a large number of objections to a proposed class

5

action settlement raises a strong presumption that the terms of a proposed class action settlement

6

are favorable to the class members."  Nat'l Rural Telecomms., 221 F.R.D. at 529.

7

     Here, the class consists of 536 employees who will paid from a net settlement amount of

8

$302,315.00 based upon the members' number of "Compensable Workweeks worked thereby

9

during the Settlement Period, divided by the total number of Compensable Workweeks worked

10

by all Settlement Class Members during said period."  (Pl.'s Mot. FA (ECF No. 73) at 16; Decl.

11

Singh (ECF No. 73-2) at 4.)  Of the Notices to the class only 7 were ultimately undeliverable,

12

only 5 members opted out (aside from Reynaud Lozada), and there have been no objections to the

13

proposed settlement.  (Decl. Singh (ECF No. 73-2) at 3.)  Moreover, the court finds that the

14

amount of settlement weighs in favor of approving the settlement when compared to other

15

comparable settlements.  See, e.g., Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489

16

(E.D. Cal. 2010) ("$2600 per claimant net of all expenses, is a sizeable settlement in a wage and

17

hour case involving low-income workers.").  This factor weighs in favor of approving the

18

settlement.

19

     **D.**    **Extent of Discovery and State of the Proceedings**

20

     "A settlement following sufficient discovery and genuine arms-length negotiation is

21

presumed fair."  Nat'l Rural Telecomms., 221 F.R.D. at 528 (citing City Partnership Co. v.

22

Atlantic Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir.1996)).  Here, plaintiff obtained

23

from defendant class data for the purposes of calculating damages, took depositions, and received

24

320 pages of defendant's internal records regarding policies and plaintiff's employment and

25

timekeeping records.  (Decl. Van Note (ECF No. 73-1) at 3.)  The parties also engaged in two

26

rounds of mediation before a neutral mediator with substantial knowledge of California wage and

27

hour law and class action procedure.  (Id.)

28

////

1    Under these circumstances the court finds that the settlement was reached as the result of

2  an arms-length negotiation with sufficient discovery.  Accordingly, this factor weighs in favor of

3  approving the settlement.

4        **E.      Experience and View of Counsel**

5        "Parties represented by competent counsel are better positioned than courts to produce a

6  settlement that fairly reflects each party's expected outcome in litigation."  In re Pacific

7  Enterprises Securities Litigation, 47 F.3d 373, 378 (9th Cir. 1995).  Accordingly, "'[g]reat

8  weight' is accorded to the recommendation of counsel, who are most closely acquainted with the

9  facts of the underlying litigation.'"  Nat'l Rural Telecomms, 221 F.R.D. at 528 (quoting In re

10  Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D. N.Y. 1997)).

11       Here, plaintiff's counsel has "handled several hundred wage and hour class actions."

12  (Pl.'s Mot. FA (ECF No. 73) at 18.)  Plaintiff's counsel views the settlement as "a favorable result

13  for the Settlement Class."  (Id.)  Accordingly, this factor weighs in favor of approving the

14  settlement.

15        **F.      Reaction of the Class**

16       As noted above, "[i]t is established that the absence of a large number of objections to a

17  proposed class action settlement raises a strong presumption that the terms of a proposed class

18  action settlement are favorable to the class members."  Nat'l Rural Telecomms., 221 F.R.D. at

19  529.  Here, from a class of 536 only 6 members have sought to opt out (including Lozada), and

20  there have been no objections to the proposed settlement.  "By any standard, the lack of objection

21  of the Class Members favors approval of the Settlement."  In re Omnivision Technologies, Inc.,

22  559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008).  Accordingly, this factor weighs in favor of

23  approving the settlement.

24        **G.      Possibility of Collusion or Conflicts of Interest**

25       "[W]hen a settlement is negotiated absent class certification . . . .  the district court abuses

26  its discretion if it fails to apply 'an even higher level of scrutiny for evidence of collusion or other

27  conflicts of interest than is ordinarily required under Rule 23(e).'"  Roes, 1–2 v. SFBSC

28  Management, LLC, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting In re Bluetooth, 654 F.3d at

946).  Subtle signs of collusion include: "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant."  Allen v. Bedolla, 787 F.3d 1218, 1224 (9th Cir. 2015).

The court's May 26, 2023 order noted that the parties' settlement contains a "'clear sailing agreement' in which defendant agrees not to object to the award of attorneys' fees."  (ECF No. 65 at 8.)  "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to . . . scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested."  Roes, 944 F.3d at 1051 (quotation omitted).

Although the court will address plaintiff's motion for attorney's fees below, the court notes that requested attorneys' fees of $183,315 corresponds to 33 1/3% of the settlement fund—which is within the standard awarded in these types of actions.  See Martin v. AmeriPride Services, Inc., No. 08-cv-440-MMA (JMA), 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) ("courts may award attorneys' fees in the 30−40% range in wage and hour class actions that result in recovery of a common fund under $10 million."); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."); Singer v. Becton Dickinson & Co., No. 08-cv-821-IEG (BLM), 2008 WL 2899825, at *8 (S.D. Cal. June 1, 2008) ("attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases").

Moreover, the compensation to the class under the terms of the settlement consists solely of monetary compensation and is the result of a non-reversionary payment by defendant—reducing the risk that the value of the settlement was inflated.  See Roes, 944 F.3d at 1056.  And the parties' settlement was reached as the result of private mediation before a neutral mediator with substantial knowledge of California wage and hour law and class-actions.  (Pl.'s Mot. FA ////

13

1    (ECF No. 73) at 11.)  Under these circumstances, the court finds no collusion or conflict of

2    interest.

3            **H.     Conclusion**

4            Upon consideration of all the relevant factors the court finds that the settlement is fair,

5    adequate, and free from collusion.  Plaintiff's motion for final approval of the class action

6    settlement is granted.

7    **III.    Incentive Award**

8            As noted above, the proposed settlement includes a request for a $5,000 incentive award

9    for plaintiff as class representative.  "'Modest compensation may sometimes be merited for extra

10   time spent by the class representatives in meeting with class members, gathering discovery

11   materials on behalf of the class, and similar efforts.'"  <u>In re Domestic Air Transp. Antitrust</u>

12   <u>Litigation</u>, 148 F.R.D. 297, 358 (N.D. Ga. 1993) (quoting Manual for Complex Litigation § 30.41

13   n. 86 (2d ed. 1985)).  In analyzing whether to exercise the discretion to order such an award the

14   court looks to:

15           1) the risk to the class representative in commencing suit, both
             financial and otherwise; 2) the notoriety and personal difficulties
16           encountered by the class representative; 3) the amount of time and
             effort spent by the class representative; 4) the duration of the
17           litigation and; 5) the personal benefit (or lack thereof) enjoyed by the
             class representative as a result of the litigation.
18

19   <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

20           Plaintiff has provided a declaration that speaks to both the risk and effort required by

21   plaintiff in pursuing this litigation.  (Jones Decl. (ECF No. 73-3) at 3.)  Under the circumstances

22   presented here, the court will approve the requested award.

23   **IV.    Attorney's Fees and Costs**

24           Class counsel seeks a fee award of $183,315 and reimbursement for $7,618.30 in costs.

25   (Pl.'s Mot. FA (ECF No. 73) at 14.)  "While attorneys' fees and costs may be awarded in a

26   certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h),

27   courts have an independent obligation to ensure that the award, like the settlement itself, is

28   reasonable, even if the parties have already agreed to an amount."  <u>In re Bluetooth</u>, 654 F.3d at

                                                    14

941.  Where, as here, the settlement calls for the funding of a common fund "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to evaluate the reasonableness of the fee award.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

It is established that "25 percent of the fund" is the "benchmark . . . in common fund cases."  Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  "The typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value, with 25 percent considered a benchmark percentage."  Schiller v. David's Bridal, Inc., No. 1:10-cv-0616 AWI SKO, 2012 WL 2117001, at *16 (E.D. Cal. June 11, 2012) (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000)).  However, "California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark."  Martin, 2011 WL 2313604, at *8.

Even where the court uses the percentage method, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  Vizcaino, 290 F.3d at 1050.  Under the Lodestar approach, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1933).  In assessing application for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community.  Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).  It is also the general rule that the "relevant legal community" is the forum in which the district court sits. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted).  "Hours expended on unrelated, unsuccessful claims should not be included in an award

1    of fees." Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239

2    F.3d 1140, 1147 (9th Cir. 2001)).

3         Ultimately, under either the percentage approach or the lodestar method the important

4    inquiry is whether the award is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir.

5    2000).  In determining the reasonableness of an award the court can look to: (1) the results

6    achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the

7    contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in

8    similar cases.  Vizcaino, 290 F.3d at 1048-50.  Consideration of these factors can require an

9    upward or downward adjustment of the award.

10        Here, plaintiff's counsel seeks an award of $183,315—an amount equal to 33 1/3% of the

11   gross settlement amount.  (Pl.'s Mot. FA (ECF No. 73) at 13.)  The court finds this award to be

12   fair and reasonable given the results achieved, the risk taken by counsel given the contingent

13   nature of the representation, counsel's experience and skill, and the awards in similar cases.  See,

14   e.g., Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 492 (E.D. Cal. 2010) ("The

15   Settlement's provision of $100,000 in attorney's fees (or approximately 33.3% of the total

16   recovery obtained), is fair and reasonable in light of the good result achieved for Plaintiffs, the

17   risk counsel took pursuing the matter, and the skill they exhibited prosecuting the case."); In re

18   Omnivision, 559 F.Supp.2d at 1047 ("[I]n most common fund cases, the award exceeds th[e]

19   benchmark."); In re Activision Securities Litigation, 723 F.Supp. 1373, 1377 (N.D. Cal. 1989)

20   ("This court's review of recent reported cases discloses that nearly all common fund awards range

21   around 30% even after thorough application of either the lodestar or twelve-factor method.").

22        Moreover, a roughly calculated lodestar crosscheck also finds that the fee request is fair

23   and reasonable.  See Schiller, 2012 WL 2117001 at *22 ("Where the lodestar is utilized as a

24   cross-check, such a 'rough calculation' is appropriate.").  As of the filing of the motion for final

25   approval counsel expended 538.8 hours of attorney time on this matter.  (Pl.'s Mot. FA (ECF No.

26   73) at 31.)  That amount of time seems reasonable given the work involved in this action and

27   there is no reason to believe counsel expended unnecessary time.

28   ////

1    An award of $183,315 for 538.8 hours of attorney time results in an hourly rate of

2    $340.54.  That rate is more than reasonable for attorneys of similar skill and experience,

3    appearing in like cases, in this district.  See Turk v. Gale/Triangle, Inc., No. 2:16-cv-0783 MCE

4    DB, 2017 WL 4181088, at *4 (E.D. Cal. Sept. 21, 2017) (approving "$200 to $600 per hour

5    depending on seniority"); Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc., No.

6    2:13-cv-0672 KJM KJN, 2015 WL 3622999, at *12 (E.D. Cal. 2015) (approving rates as high as

7    $650).  Moreover, because plaintiff's motion s was filed in advance, this calculation does not

8    account for the hours of attorney time spent at the November 17, 2023 hearing of the motion for

9    final approval.

10    Accordingly, for the reasons stated above, the court finds that the requested $183,315 for

11    attorneys' fees is fair and reasonable.  Plaintiff's request for attorneys' fees will, therefore, be

12    granted.

13    Plaintiff has also requested reimbursement for $7,618.30 in costs.  (Pl.'s Mot. FA (ECF

14    No. 73) at 14.)  "[I]n evaluating the reasonableness of costs, 'the judge has to step in and play

15    surrogate client.'"  In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act

16    (FACTA) Litigation, 295 F.R.D. 438, 469 (C.D. Cal. 2014) (quoting Matter of Continental

17    Illinois Securities Litigation, 962 F.2d 566, 572 (7th Cir. 1992)).  Although the parties' settlement

18    allowed for costs up to $10,000, plaintiff's counsel has kept costs below this threshold.  In light of

19    this fact, and after reviewing counsel's costs, the court finds them appropriate and reasonable.

20    (Ex. C (ECF No. 73-1) at 64.)  Accordingly, plaintiff's request for $7,618.30 in costs will be

21    granted.

## CONCLUSION

23    For the reasons stated above, IT IS HEREBY ORDERED that:

24    1.  Reynaud Lozada's motion for exclusion (ECF No. 75), as amended (ECF No. 76), is

25    granted;

26    2.  Plaintiff's September 8, 2023 motion for final approval (ECF No. 73) is granted;

27    3.  The parties are ordered to act in accordance with the terms of the settlement agreement;

28    4.  The court declines to maintain jurisdiction to enforce the terms of the parties'

17

settlement agreement unless there is some independent basis for federal jurisdiction.  See

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) ("[E]nforcement of the

settlement agreement is for state courts, unless there is some independent basis for federal

jurisdiction."); and

     5.  The Clerk shall enter judgment and close this case.

Dated:  May 13, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.consent\jones0564.exclusion.final.approv.ord